UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


ALFRED LEWIS FENNIE,

      Petitioner,

v.                            Case No. 8:03-cv-2068-T-23TGW
                                     **Death Case**
JAMES V. CROSBY, JR.,

      Respondent.

_____/

## O R D E R

    Alfred Fennie petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 8) and challenges the validity of both his sentence of death and his conviction for murdering Mary Elaine Shearin, a wife and mother of two teenage children.  In 2006 the respondent's motion to dismiss (Doc. 12) was granted (Doc. 18) and grounds III, V, VI, XI, XII (in part), XIII, XIV, XV-XVII, and XVIII (in part) were dismissed for procedural reasons.  The respondent addressed the merits of the remaining grounds in his response (Doc. 22), Fennie filed a response (Doc. 23), and the respondent replied. (Doc. 24)  This order disposes of the remaining grounds in the petition.

## BACKGROUND

    The facts supporting Fennie's conviction, as reported in <u>Fennie v. State</u>, 648 So. 2d 95, 96 (Fla. 1994) ("<u>Fennie I</u>"), <u>cert. denied</u>, 513 U.S. 1159 (1995), are not complicated:

On September 8, 1991, two men reported observing the body of a woman lying face down along a road in the Ridge Manor area of Hernando County. Police officers responding to the report discovered the woman's hands had been bound behind her and she had been shot in the back of the head. Investigators later identified the victim as Mary Elaine Shearin.

Shearin's husband informed officers that his wife left their home early that morning driving a 1986 Cadillac.  On September 9, 1991, Tampa police located Shearin's vehicle in the possession of two males who identified themselves as Ezell Foster and Ansell Rose.  The officers impounded the vehicle and in a subsequent search uncovered certain items relating to Shearin's murder, including a .25 caliber pistol that fired the bullet recovered from Shearin's body and a piece of rope matching that used to tie Shearin's hands.  Investigators also discovered evidence indicating that the victim, while still alive, had been placed in the trunk of the vehicle.

The two men in the vehicle were taken into custody and questioned.  Police released Rose after verifying that he met the driver of the vehicle shortly before the arrest and was not involved in the murder.  The driver, later identified as Alfred L. Fennie, gave several conflicting accounts of how he came to be in possession of Shearin's car.  Fennie's statements to investigators differed each time with respect to the identity of a second suspect and his knowledge of that suspect's involvement in Shearin's death. Fennie finally identified the second suspect as Michael Frazier and admitted that he drove Shearin's car, at Frazier's behest, to the remote location where Frazier eventually shot Shearin.

Michael Frazier testified that Fennie was responsible for Shearin's kidnapping and murder.  Frazier stated that Fennie waved Shearin down while she was driving, then forced her into the trunk of her car at gunpoint.[1] Frazier stated that he rode with Fennie in Shearin's car for a period of time, during which Fennie attempted to use Shearin's credit cards to obtain money from several ATM machines.  According to Frazier, Fennie also stopped to pick up several concrete blocks.  Fennie and Frazier then proceeded to Frazier's home where they picked up Paula Colbert, who was both Frazier's cousin and Fennie's girlfriend.  Fennie also collected some rope from Frazier's home before all three got back into Shearin's car.

---

[1]  Frazier testified that, shortly after midnight on the morning of the murder, he told Fennie that he needed money.  At Fennie's suggestion, around 1:00 a.m. Frazier and Fennie walked to a nearby street corner on a main thoroughfare beside a "housing project" to get Frazier some money.  After about forty-five minutes, Fennie "waived down" a "cream colored, beige Cadillac . . . [driven by a] white lady," jumped into her car, and turned the car onto the next side street.  Frazier ran to the car and, as "I walked up to the car, [Fennie] had the gun pointed at the lady, telling her to get in the trunk, and then, in his left hand, he had her purse, some jewelry, and her credit cards."  (Respondent's Exhibit A-12 at 1472-74)

Fennie later told Frazier and Colbert that he planned to use the rope and concrete blocks to drown Shearin, but then decided to shoot her instead. Frazier further testified that after making several stops, Colbert drove the car to a wooded area where Frazier and Fennie removed Shearin from the trunk. Fennie then walked Shearin down a dirt road until the two were out of sight and shot her.

The autopsy showed that the victim had recently engaged in sexual intercourse, but the medical examiner could not determine whether it was consensual or rape. (Respondent's Exhibit A-10 at 1118 and 1137) Fennie admitted to the police that he engaged in consensual sexual intercourse with the victim. Frazier testified that, following the failure to obtain money using the bank card access number provided by the victim, Fennie removed the victim from the trunk of the car, forced her into the backseat, and got into the backseat with her. Frazier testified that he walked away to smoke a cigarette but overheard the victim state that "she don't let her husband do these type of things to her." (Respondent's Exhibit A-12 at 1478) Fennie was not charged with sexual battery.[2]

During the guilt phase a jury convicted Fennie of first degree murder, armed kidnapping, and robbery, and during the penalty phase the jury unanimously recommended death. (Respondent's Exhibit A-2 at 384-89) The trial judge found five aggravating factors,[3] no statutory mitigating factors, but ten non-statutory mitigating

---

[2] Nevertheless, the uncontested fact that Fennie engaged in sexual intercourse with the victim was mentioned during the trial. Fennie includes among his grounds a challenge to the prosecution's characterizing this intercourse as rape.

[3] The aggravating factors are "(1) the crime was committed while engaged in the commission of a kidnapping; (2) the crime was committed to avoid arrest; (3) the crime was committed for financial gain; (4) the crime was heinous, atrocious or cruel; and (5) the crime was cold, calculated and premeditated." Fennie I, 648 So. 2d at 96-97.

factors.[4]  (Respondent's Exhibit A-3 at 452-63)  The trial judge imposed a sentence of death because he determined that "the aggravating factors far outweigh the mitigating circumstances."  (Respondent's Exhibit A-3 at 463)

Following affirmance on direct appeal in Fennie I, Fennie challenged his conviction and sentence in both a state Rule 3.850 motion for post-conviction relief (in which he alleged the ineffective assistance of trial counsel) and a state petition for the writ of habeas corpus (in which he alleged the ineffective assistance of appellate counsel).  Fennie's challenges were rejected.  Fennie v. State, 855 So. 2d 597 (Fla. 2003) ("Fennie II"), cert. denied, 541 U.S. 975 (2004).

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding.  Wilcox v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).  Section 2254(d), which creates a highly deferential standard for federal court review of a state criminal adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[4]  The non-statutory mitigating factors are "(1) Fennie came from a broken home; (2) Fennie grew up in the Tampa projects; (3) Fennie is the father of three children; (4) Fennie paid child support when he could; (5) Fennie has some talent as an artist; (6) Fennie spent time caring for his sister's children; (7) Fennie had counseled children about the perils of a life of crime; (8) Fennie was a model prisoner; (9) Fennie is a human being; and (10) Fennie was not known to be violent."  Fennie I, 648 So. 2d at 97 n.6.

In <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000), the Supreme Court

elaborated this deferential, statutory standard of review:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal
> habeas court to grant a state prisoner's application for a writ of habeas
> corpus with respect to claims adjudicated on the merits in state court.
> Under § 2254(d)(1), the writ may issue only if one of the following two
> conditions is satisfied—the state-court adjudication resulted in a decision
> that (1) "was contrary to . . . clearly established Federal Law, as
> determined by the Supreme Court of the United States," or (2) "involved an
> unreasonable application of . . . clearly established Federal law, as
> determined by the Supreme Court of the United States."  Under the
> "contrary to" clause, a federal habeas court may grant the writ if the state
> court arrives at a conclusion opposite to that reached by this Court on a
> question of law or if the state court decides a case differently than this
> Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts of
> the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established

federal law is objectively unreasonable, . . . an unreasonable application is different

from an incorrect one." <u>Bell v. Cone</u>, 535 U.S. at 694.  <u>See</u> <u>Brown v. Head</u>, 272 F.3d

1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness

<u>per se</u>, of the state court decision that we are to decide.").  Moreover, the phrase

"clearly established Federal law" encompasses only the holdings of the United States

Supreme court "as of the time of the relevant state-court decision." <u>Williams v. Taylor</u>,

529 U.S. at 412.

The purpose of federal review is not to re-try the state case.  "The [AEDPA]

modified a federal habeas court's role in reviewing state prisoner applications in order

to prevent federal habeas 'retrials' and to ensure that state-court convictions are given

effect to the extent possible under law." <u>Bell v. Cone</u>, 535 U.S. 685, 693  (2002).

Federal courts must afford due deference to a state court's decision.  "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." Renico v. Lett, ____ U.S. ____, 130 S. Ct. 1855, 1866 (2010).

Fennie bears the burden of overcoming by clear and convincing evidence a state court factual determination.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact.  Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001).

Following the dismissal (Doc. 18) of several grounds for procedural reasons, the grounds entitled to a review on the merits are I, II, IV, VII, VIII, IX, X, XII (limited to only the claim of ineffective assistance of appellate counsel), XVIII (limited to only the claim of ineffective assistance of trial counsel), and XIX.  Several grounds allege that Fennie endured the ineffective assistance of counsel.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Ineffective assistance of counsel is a difficult claim to sustain.  "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).  Strickland v. Washington, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented.  In <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims.  According to <u>Strickland</u>, first, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  <u>Strickland</u>, 466 U.S. at 687, 104 S. Ct. 2052.

<u>Sims v. Singletary</u>, 155 F.3d 1297, 1305 (11th Cir. 1998).

<u>Strickland</u> requires proof of both deficient performance and consequent prejudice.  <u>Strickland</u>, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); <u>Sims</u>, 155 F.3d at 1305 ("When applying <u>Strickland</u>, we are free to dispose of ineffectiveness claims on either of its two grounds.").  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Strickland</u>, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  466 U.S. at 690.  <u>Strickland</u> requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  466 U.S. at 690.

Fennie must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."

466 U.S. at 691-92.  To meet this burden, Fennie must show "a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have

been different.  A reasonable probability is a probability sufficient to undermine

confidence in the outcome."  466 U.S. at 694.

Strickland cautions that "strategic choices made after thorough investigation of

law and facts relevant to plausible options are virtually unchallengeable; and strategic

choices made after less than complete investigation are reasonable precisely to the

extent that reasonable professional judgments support the limitations on investigation."

466 U.S. at 690-91.  Fennie cannot meet his burden merely by showing that the

avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done.
> Nor is the test even what most good lawyers would have done.  We ask
> only whether some reasonable lawyer at the trial could have acted, in the
> circumstances, as defense counsel acted at trial . . . .  We are not
> interested in grading lawyers' performances; we are interested in whether
> the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  Accord Chandler v.

United States, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial

lawyers, in every case, could have done something more or something different.  So,

omissions are inevitable . . . .  [T]he issue is not what is possible or 'what is prudent or

appropriate, but only what is constitutionally compelled.'") (en banc) (quoting Burger v.

Kemp, 483 U.S. 776, 794 (1987)).  See also Jones v. Barnes, 463 U.S. 745, 751 (1983)

(counsel has no duty to raise a frivolous claim).

Fennie must prove that the state court's decision was "(1) . . . contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined

by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  In <u>Fennie II</u>, 855 So. 2d at 602, the Florida supreme court recognized that <u>Strickland</u> controls a claim of ineffective assistance of counsel.  Consequently, Fennie cannot meet the "contrary to" test in Section 2254(d)(1).  Fennie instead must show that the state court unreasonably applied <u>Strickland</u> or unreasonably determined the facts.  In determining "reasonableness," a federal petition for the writ of habeas corpus authorizes determining only "whether the state habeas court was objectively reasonable in its <u>Strickland</u> inquiry," not assessing independently whether counsel's actions were reasonable.  <u>Putnam v. Head</u>, 268 F.3d 1223, 1244 n.17 (11th Cir. 2001), <u>cert. denied</u>, 537 U.S. 870 (2002).

## ANALYSIS

The state post-conviction judge[5] included insightful comments in the order denying post-conviction relief (Respondent's Exhibit C-21 at 3619):

> This was not your ordinary trial, not even your ordinary first degree murder trial.  There were three defendants together charged with varying forms of first degree murder.  Depending on which statement you reviewed, their stories differed throughout the proceedings, and even continued to evolve the day of the evidentiary hearing held in this cause.  Both Frazier and Fennie were pointing their fingers at each other as to who did the actual killing.  Colbert's testimony was all over the place.[6]  These problems were compounded by the fact that Mr. Fennie was a very difficult client to control, and Mr. Fennie was extremely fast and loose with the facts.  Much of the trial defense's pretrial preparation was spent chasing leads given by their client, including the fact that the crime actually occurred in another

---

[5]  The state post-conviction judge was not the trial judge.

[6]  Frazier testified for the prosecution.  Fennie did not testify.  Neither party had Colbert testify.

county.[7]  The manipulations of the defendant, Fennie, were so bizarre that he even volunteered (over advice of trial defense counsel) to testify at the grand jury proceeding, and in fact did so testify at the grand jury proceeding, all without even notifying his trial defense attorney.

The grounds reviewable on the merits are addressed beginning with pre-trial issues and concluding with allegations of ineffective assistance of appellate counsel. Because of the presumption of correctness and the highly deferential standard of review, the analysis of each claim must start with the state court's analysis.

## **Pretrial Issues**

The only pretrial activity challenged in the petition involves the jury selection.

### Ground XIX

> Mr. Fennie's trial counsel was ineffective for failing to protect his client's right to be tried by a fair and impartial jury.  Trial counsel failed to effectively question jurors on the issues of race and racial tensions in the community where Mr. Fennie's trial was held; trial counsel failed to request individual voir dire to ensure effective questioning of jurors on the issues of race and racial tensions in the community where Mr. Fennie's trial was held; and trial counsel failed to request a change of venue due to the racially charged atmosphere in the community where Mr. Fennie's trial was held.  Trial counsel's errors violated Mr. Fennie's Sixth Amendment right to effective representation in both phases of Mr. Fennie's trial.  The lower court erred in denying Mr. Fennie relief on this claim.

To summarize this ground, Fennie alleges that, because of race and racial tensions in the community, trial counsel should have (1) used a different approach when

---

[7]  Trial counsel testified in the post-conviction evidentiary hearing that Fennie's lies to trial counsel "wasted a lot of [defense preparation] time" and that Fennie lied to both the police and the court. (Respondent's Exhibit C-28 at 699 and 703)

questioning members of the venire, (2) requested individual voir dire, and (3) moved for a change of venue.  Fennie II, 855 So. 2d at 601-03, rejected this claim:[8]

Ineffective Assistance of Counsel during Voir Dire

> In the first issue meriting discussion, Fennie alleges that guilt phase trial counsel was functionally and constructively absent during voir dire in Fennie's case because he failed to effectively question jurors on the issues of race and racial tensions in the community in which the trial was held, request individual voir dire to ensure effective questioning on these issues, and seek a change of venue.  According to Fennie, a thorough voir dire examination was necessary, given the interracial nature of the crime, the State's allegation that Fennie raped the victim prior to her death, and the history of racial tension in the trial community of Brooksville, Florida.  Fennie asserts that these tensions were exacerbated by the beating death of a white teenager by a group of black youths less than two years prior to Fennie's trial (hereinafter, the "Smith case").
>
> . . . .
>
> Fennie's trial counsel conducted a vigorous voir dire, the transcript for which covered 900 pages.  During the questioning of two of the four panels of prospective jurors, counsel posed a series of race-related questions to several individuals.  The jury ultimately empaneled to decide Fennie's case included two African Americans; both alternate jurors were also African American.  Clearly, Fennie's counsel did not stand mute during the jury selection process or otherwise completely fail to test the impartiality of jurors on important matters.
>
> . . . .
>
> The lower court properly analyzed Fennie's claim of ineffective assistance of counsel under the two-part Strickland test, and determined that Fennie could demonstrate neither deficient performance during voir dire nor prejudicial impact.  In reviewing claims of ineffective assistance of counsel, this Court will defer to the lower court's findings of fact and review as questions of mixed law and fact whether counsel's performance was ineffective, and whether the defendant was prejudiced by that ineffective performance.  See Ragsdale v. State, 798 So. 2d 713, 715 (Fla. 2001).  We

---

[8] In the state proceedings, Fennie unsuccessfully argued that trial counsel essentially abandoned him during voir dire and that, as a consequence, United States v. Cronic, 466 U.S. 648 (1984), requires a presumption of prejudice.  Fennie's federal petition contains no claim based on Cronic.

conclude that the trial court's denial of Fennie's ineffective assistance of counsel claim is fully supported by the record, consistent with the evidence and consistent with controlling caselaw.

The record reveals that trial counsel made a strategic decision not to ask each prospective juror specific race-based questions.  Trial counsel testified during the postconviction proceeding that he does not automatically ask race-related questions in interracial crimes, and that his decision to do so turns on the composition of the prospective panels and the facts of the case involved.  Counsel further asserted that he did not regard Fennie's case as racially motivated, and that he wanted to avoid offending or alienating potential jurors by asking each of them questions related to race.  In trial counsel's experience, the risk of jury alienation would not have been cured through the use of individual voir dire.  Counsel confirmed that he went over each juror strike with Fennie and consulted him before the jury was empaneled.  Counsel further testified that having successfully selected a jury, there was no basis on which to request a change of venue under controlling caselaw.  See Henyard v. State, 689 So. 2d 239, 245 (Fla. 1996).  The record supports the reasonableness of counsel's decision to avoid the creation of racial conflict during the voir dire process, and belies any basis for an ineffective assistance of counsel claim.  See Maharaj v. State, 778 So. 2d 944, 959 (Fla. 2000).

The reasonableness of counsel's course of action is further underscored by his experience.  Alan Fanter had practiced in Brooksville for eleven years at the time of Fennie's trial, and had previously successfully litigated interracial crimes.  Indeed, Fanter represented John Smith, the only black youth to be brought to trial for the 1990 beating death of a white teenager, and succeeded in obtaining a third-degree murder conviction from a Brooksville jury in the face of intense publicity and an all white jury pool.[9]  In response to questions from the court during the postconviction proceeding, Fanter confirmed that he had represented the defendant in the Smith case in accordance with the knowledge and experience he had gained in prior cases and applied that experience in representing Fennie in the present case.  Far from constituting ineffective assistance, counsel's actions in the instant case demonstrate a level of competency beyond that which exists in many cases that involve sensitive matters.  We therefore deny Fennie's ineffective assistance of counsel claim as to this aspect of the proceedings.

---

[9]   John Smith was tried for capital murder but found guilty of third degree murder, after which the state reached plea agreements with the remaining defendants.

The federal petition (Doc. 8 at 79) challenges <u>Fennie II</u>'s "finding . . . that trial counsel made a strategic decision not to ask race-based questions" and contends that the decision "is not supported by the record or the law."

1.  Questioning the Venire

The underlying premise for this claim is Fennie's assertion that the trial occurred while Brooksville was experiencing a "racially charged atmosphere" caused by the earlier Smith trial.  According to the order denying post-conviction relief (Respondent's Exhibit C-21 at 3614-15), Fennie failed to prove his underlying premise.

> The bulk of the defense's argument and evidence relates to the claim that trial defense counsel's voir dire was ineffective because trial defense counsel allegedly did not sufficiently question all of the potential jurors regarding race and racial tensions at the time of trial.  Collateral defense counsel takes great pains in trying to paint a picture of racial hostility and turmoil in the Brooksville community at the time of the trial in this matter, and claims that, because of such racial hostility and turmoil, it was essential for effective representation of Mr. Fennie that trial defense counsel thoroughly and completely interrogate each and every potential juror regarding their opinions on matters of race and possible racial prejudice.
>
> First and foremost, collateral counsel never presented anyone to testify on the issue regarding the allegedly racial hostility and turmoil in the Brooksville community at the time of the trial.  While it is true that collateral defense counsel placed into evidence various newspaper articles concerning events in the Brooksville community, those items standing alone do not conclusively demonstrate that collateral defense counsel's initial premise is even true.

The post-conviction order (Respondent's Exhibit C-21 at 3615-16) (citations to the record omitted) also rejected the opinion of Fennie's expert, who opined that trial counsel's performance was ineffective:

> Simply stated, the Court was not overly impressed with the opinions testified to by [defendant's expert].
>
> . . . .

- 13 -

Secondly, [the expert]'s opinions were thoroughly attacked by the State on cross examination and are clear in the record.  Of great importance to the Court is that [the expert] did not know anything about Mr. Fanter, his training, his experience, or his success at the local level; nor did [the expert] know anything about the demographics of Hernando County in 1992.  Most importantly, the evidentiary hearing did not consider where the jurors at trial lived.  For example, the evidentiary hearing never determined whether the jurors at trial were from Brooksville proper or Spring Hill, or whether that would make a difference at all.

What the record does reflect is that Mr. Fanter had more experience in trying capital cases than did collateral defense counsel's alleged expert . . . .  Mr. Fanter had litigated five or six capital trials.  Mr. Fanter was born in Chicago, went to law school at Stetson, and had practiced as an attorney in the Hernando County area for approximately eleven years as of the time of trial in this cause.  Mr. Fanter did ask some jurors questions about race issues but did not ask those questions of all jurors.  Mr. Fanter explained that he was handling the situation as he deemed it appropriate at the moment, and part of his trial strategy was that he didn't want to offend jurors by inquiring about racial issues with every one.  The final jury that tried Mr. Fennie consisted of two African-American jurors on the actual panel, as well as two African-American jurors as alternates.  Therefore, over 16% of the jury was of African-American ethnicity, and thus Mr. Fennie received a trial by a jury composed of at least a representative portion of his ethnic peers. Most importantly, Mr. Fanter admitted experience with picking jurors in Hernando County, especially on cases with Black defendants where Whites were victims, and acknowledged that he recently tried Black on White cases "successfully" in Brooksville.

Both <u>Fennie II</u> and the post-conviction judge found that, based on counsel's experience trying cases in Brooksville in which race was an issue, trial counsel determined that probing race issues too deeply on voir dire risked alienating members of this jury.  Experienced trial counsel's strategic decision is entitled to deference.  The term "strategy" is broadly defined.  "By 'strategy,' we mean no more than this concept: trial counsel's course of conduct, that was neither directly prohibited by law nor directly required by law, for obtaining a favorable result for his client."  <u>Chandler v. United States</u>, 218 F.3d at 1314 n.14.  <u>See also</u> <u>Felker v. Thomas</u>, 52 F.3d 907, 912 (11th Cir.

1995) ("Within that wide range of reasonable professional assistance [that is constitutionally acceptable], there is room for different strategies, no one of which is 'correct' to the exclusion of all others.").

Questioning a venire about possible racial prejudice is not required simply because the race of the victim and the assailant differ. "[T]here is no per se constitutional rule in such circumstances requiring inquiry as to racial prejudice. Rosales-Lopez v. United States, 451 U.S. 182, 190 (1981), citing Ristaino v. Ross, 424 U.S. 589 (1976). In his state Rule 3.850 motion to vacate (Respondent's Exhibit C-13 at 2301-02), Fennie admits that, based on Ristaino, "the constitution does not specifically require that venirepersons be questioned about racial prejudice in every case and that the determination of impartiality is within the province of the trial judge."

Fennie erroneously relies on Turner v. Murray, 476 U.S. 28 (1986), which holds that a judge errs by precluding questioning about race. Fennie's counsel was not precluded from inquiring, he strategically chose to limit his questions about race to avoid alienating the jurors. Consequently, Fennie II is neither contrary to, nor an unreasonable application of, Turner.

2.  Individual Voir Dire

Fennie alleges that trial counsel was ineffective for not requesting individual voir dire regarding race.[10]  Fennie II, 855 So. 2d at 603, rejected this claim and deferred to

_____

[10]  Although trial counsel requested individual voir dire (Respondent's Exhibit A-1 at 191-93), race was not specifically mentioned in the motion.  During a pre-trial hearing, the trial judge ruled that, pursuant to his customary procedure, the attorneys could conduct individual voir dire of those members of the venire who indicated some knowledge about the case.  (Respondent's Exhibit A-5 at 46)

trial counsel's strategy, which was based on his experience selecting juries in inter-racial

cases in Brooksville.

> In trial counsel's experience, the risk of jury alienation would not have been
> cured through the use of individual voir dire.  . . .  The record supports the
> reasonableness of counsel's decision to avoid the creation of racial conflict
> during the voir dire process, and belies any basis for an ineffective
> assistance of counsel claim.

Fennie II's deference to trial counsel's strategy is not an unreasonable application of

Strickland.

3.  Change of Venue

Fennie alleges that trial counsel was ineffective for not requesting a change of

venue.  Fennie shows no viable basis for trial counsel to have requested a change of

venue.  As stated in the order denying post-conviction relief, trial counsel was required

to first attempt to select a fair jury before moving for a change of venue.  "[T]he

preferred procedure is to first attempt to sit a jury in the county where the alleged crime

occurred, and then, if same does not appear possible, to consider motions for change of

venue."  (Respondent's Exhibit C-21 at 3618)  The need for a change of venue was

obviated because a fair jury was seated.  "Counsel further testified that having

successfully selected a jury, there was no basis on which to request a change of venue

under controlling caselaw.  See Henyard v. State, 689 So. 2d 239, 245 (Fla. 1996)."

Fennie II, 855 So. 2d at 603.  The record supports the state court's determination.

* * *

Fennie contends that the state court's rejection of his ineffective assistance of

counsel claim "is not supported by the record or the law."  To the contrary, "the trial

court's denial of Fennie's ineffective assistance of counsel claim is fully supported by the record, consistent with the evidence and consistent with controlling caselaw." Fennie II, 855 So. 2d at 603.  The state court's ruling was neither an unreasonable application of Strickland not an unreasonable determination of the facts.  Consequently, ground XIX lacks merit.

### **Guilt Phase Issues**

Fennie presents two grounds that involve the guilt phase.  The first challenges the late disclosure of a state witness and the second alleges that trial counsel rendered ineffective assistance by inadequately challenging the prosecution's evidence and failing to present evidence for the defense.

### Ground IX

> In violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, the trial court erred in denying a continuance after the late disclosure of a material state witness which deprived the defense of the opportunity to investigate potential impeachment evidence to use against the witness.

Fennie contends that the trial court erred in denying trial counsel's two motions for a continuance.  Fennie represents that each motion was based on separate alleged failures by the prosecution to timely disclose the discovery of new evidence.  The first motion involved Frazier's agreement to testify against Fennie, and the second motion involved an experiment performed on the victim's car.

The state indicted Fennie, Michael Frazier, and Paula Colbert for the kidnapping, robbery, and murder.  Fennie's trial, which was the last of the three, occurred a few weeks after Frazier's trial but before Frazier's sentencing.  Late in the afternoon of the

day before the start of jury selection, the prosecutor informed trial counsel that Frazier

would testify against Fennie.[11]   Before starting voir dire the following morning, trial

counsel orally moved for a continuance because counsel needed time to both depose

Frazier and prepare to cross-examine Frazier, which motion was denied.  (Respondent's

Exhibit A-5 at 15-39)  Trial counsel deposed Frazier two days later.  After trial

commenced and based on Frazier's deposition, the state conducted an experiment

involving the trunk of the victim's car and offered the testimony of the officer who

conducted the experiment.[12]   Trial counsel moved for a continuance, which was denied.

(Respondent's Exhibit A-12 at 1560 et seq.)  Fennie I, 648 So. 2d at 97-98, rejected this

claim:

> First, we address Fennie's claim that the trial court committed reversible
> error by denying defense counsel's motions for continuance.  Defense
> counsel initially moved for a continuance after the prosecution informed him
> the evening before trial that Michael Frazier would testify against Fennie.
> The court denied the continuance because it concluded Frazier's testimony
> would not adversely affect the defense's ability to prepare for trial.  The
> court also denied Fennie's mid-trial motion for a continuance made after the
> State introduced testimony regarding tests it conducted on Shearin's
> vehicle during trial.  The tests were taken to determine where the victim's
> hand protruded from the trunk and whether the victim could hear a
> conversation conducted inside the vehicle.  The court concluded that the
> issue to which these tests pertained was clearly on the record at the outset
> of the case and introduction of the testimony, therefore, could not adversely
> affect Fennie's defense.

_____

[11]   In exchange for Frazier's testimony the state agreed (1) to recommend concurrent sentences
of life with a mandatory twenty-five years for the murder, life for the kidnapping, and fifteen years for the
robbery, and (2) not to seek an increased sentence as a habitual felony offender.  (Respondent's Exhibit
A-5 at 26-28)

[12]   Frazier testified, apparently consistent with his deposition, that (1) Fennie stated that he was
going to shoot the victim, (2) the statement was uttered inside the car while the victim was locked inside
the trunk, and (3) a few minutes later Frazier saw the victim's fingers sticking outside of the trunk.
(Respondent's Exhibit A-12 at 1484)  Officer Gary Kimball testified that, after he was locked inside the
same trunk, he "was able to get three fingers out without too much trouble" and could easily hear a
conversation between two officers seated inside the car.  (Respondent's Exhibit A-13 at 1648 and 1656)

Fennie claims his defense was placed at risk by the denial of these continuances.  In particular, he asserts that his counsel was unable to fully investigate and prepare his defense and that his rights to adequate representation, due process and a fair trial were, thus, denied.  The trial court disagreed and we will not disturb that ruling unless Fennie establishes that the denial constituted a palpable abuse of discretion. Bouie v. State, 559 So. 2d 1113, 1114 (Fla. 1990).

An abuse of discretion is generally not found unless the court's ruling on the continuance results in undue prejudice to the defendant. See id. Fennie's defense could not have been prejudiced by the denial of his initial motion for continuance because, as the trial court indicated, he had always been aware of Frazier's involvement in the case.  Frazier's trial testimony comported with all his previous statements to police and the statement he made at his own trial.  Fennie had access to all these statements and, consequently, could not have been surprised when Frazier implicated him as the triggerman.  Additionally, the court made Frazier available for deposition and assured the defense it would reconsider a motion to continue if defense counsel encountered difficulty in obtaining witnesses or documents needed to impeach Frazier.  As a result, the defense was able to effectively cross-examine Frazier.  The trial court, therefore, did not abuse its discretion in denying a continuance.

We also find that the trial judge did not abuse his discretion in denying Fennie's request for a mid-trial continuance.  Fennie requested this continuance after the State diligently informed him that it intended to introduce, through the testimony of Officer Gary Kimball, the results of certain tests it conducted as a result of defense's deposition of Frazier.  Fennie claimed he needed time to secure his own expert to possibly refute the results of these tests.  As stated previously, however, Fennie had access to all Frazier's prior statements and could not have been surprised by Frazier's deposition testimony regarding where the victim's hands protruded from the trunk.  In addition, the defense was able to depose Kimball prior to his testimony and had an opportunity to conduct the same tests on the vehicle as those performed by the State.  The trial court also conducted a Richardson [v. State, 246 So. 2d 771 (Fla. 1971),] inquiry and determined that the introduction of this evidence would not prejudice Fennie in preparing his defense.  We agree that a continuance was not needed to respond to the introduction of this evidence.

Fennie challenges the ruling in Fennie I that the trial court did not abuse its

discretion.  A federal court ruling on a petition for the writ of habeas corpus will not

disturb a state trial court's denial of a motion for a continuance unless the state appellate court unreasonably determined "that the trial court's actions were so arbitrary as to result in the denial of due process." Alderman v. Zant, 22 F.3d 1541, 1558 (11th Cir.), cert. denied, 513 U.S. 1061 (1994). "The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel . . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process." Ungar v. Sarafite, 376 U.S. 575, 589 (1964). Accord Hicks v. Wainwright, 633 F.2d 1146, 1148 (5th Cir. 1981)[13] (To warrant habeas corpus relief, the trial court's denial of a continuance must "have been so arbitrary and fundamentally unfair that it violates the constitutional principles of due process.").

The trial court summarized trial counsel's lack of either surprise or prejudice (Respondent's Exhibit A-5 at 24-26):

> My belief is this. First of all, Mr. Fanter, it's my conclusion that you cannot stand here before this Court and indicate that you have no idea or any concept of what Mr. Frazier is going to say. That just would not be realistic. You videotaped his testimony during his trial, and you've got all the statements that he apparently gave at any time to the officers. . . . You had the list of any witnesses that the State may call that you were provided with. What you did and what you asked them that's between you and those witnesses. . . . So, again, I do feel, Mr. Fanter, that you should not be hamstrung in any way in obtaining any witness that might be necessary for you to help you impeach Mr. Frazier. Mr. Frazier, by his own admission, is a ten-time convicted felon. . . . There was also, as you've indicated, during the course of his trial some statements that he gave that are inconsistent

---

[13] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

with apparently what occurred based on all the testimony and evidence that
I've heard.  But, again, those inconsistent statements have been provided
to you way in advance of trial, and you can't say you are surprised by that.

Although he disagrees with the state court rulings, Fennie presents no basis for

this court to reject the state court's (1) findings that trial counsel was not surprised by

the content of Frazier's testimony and (2) rulings that Fennie suffered no prejudice by

the denial of his motion for a continuance.  Consequently, ground IX, which alleges trial

court error, lacks merit.  Next is Fennie's related claim of ineffective assistance of trial

counsel.

<u>Ground IV</u>

The outcome of the guilt/innocence phase of Mr. Fennie's trial
was materially unreliable because no adversarial testing
occurred due to the ineffective assistance provided by trial
counsel in violation of the Fifth, Sixth, Eighth, and Fourteen
Amendments.

In his lengthiest ground Fennie recites a series of alleged failings by trial counsel

and concludes that trial counsel rendered ineffective assistance.  Although <u>Fennie II</u>

summarily denied these claims,[14] the post-conviction judge specifically addressed

Fennie's allegations and organized the claims as failing to (1) properly prepare for the

testimony of co-defendant Frazier, (2) effectively cross-examine some witnesses and

call two other witnesses, and (3) call Fennie as a witness.

---

[14]   <u>Fennie II</u>, 855 So. 2d at 602 n.3 states, "We deny claim (4) as Fennie has failed to establish
that guilt phase counsel's performance was deficient, or, assuming deficiency, that his defense was
prejudiced as required by <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674
(1984)."

1.  Frazier's Testimony

Fennie contends that "[t]rial counsel failed to properly prepare for the

co-defendant's testimony, failed to properly cross-examine the co-defendant, and failed

to bring to the attention of the jurors inconsistencies in the various statements of the

co-defendant."  (Petition at 13)  The post-conviction judge rejected these allegations

(Respondent's Exhibit C-21 at 3619-20):

> Collateral defense counsel claims that trial defense counsel was completely
> and truly surprised by the State's [decision to present Mr. Frazier's
> testimony], blindsided by it, and totally unprepared in their cross examination
> of Mr. Frazier, thus rendering ineffective assistance to their client, Mr.
> Fennie.  This Court, though, agrees with the State that the defense could not
> have genuinely been surprised by the testifying or testimony of Mr. Frazier,
> and that their emotional objections were simply an attempt to stymy the
> State's case and/or to gain additional time for even more trial preparation.
>
> As the trial judge found, Mr. Frazier had been known to the trial defense
> counsel since the beginning of the case.  Trial defense counsel knew that
> Mr. Frazier was a key player.  Moreover, Mr. Frazier had been tried for first
> degree murder prior to Mr. Fennie, and trial defense counsel had personnel
> in the courtroom during Mr. Frazier's trial video taping the entire
> proceeding.  Moreover, trial defense counsel had been given another
> chance by the trial court to depose Mr. Frazier during trial, and they did so
> prior to his trial testimony in this case.  In addition, trial defense counsel had
> previously received and reviewed the sworn statement of Mr. Frazier given
> at the time that he was arrested.  Thus the defense was fully armed with
> Mr. Frazier's prior testimony at trial which had been videotaped; with Mr.
> Frazier's deposition taken during the trial and prior to his testimony in Mr.
> Fennie's case; and a statement of Mr. Frazier given at the time of his arrest.
> In reality, therefore, the trial defense team was not genuinely surprised
> whatsoever by the testimony of Mr. Frazier at trial; and the trial defense
> team was fully prepared to and in fact did extensively cross exam[ine] Mr.
> Frazier.  Consequently, the cross examination of Mr. Frazier at trial was not
> meager, but in fact covered fifty-three pages in the trial transcript.[15]
> Contrary to collateral defense counsel's representations, during Mr.
> Frazier's cross examination trial defense counsel did clearly reveal to the

---

[15] Frazier's cross-examination is in Respondent's Exhibit A-12 at 1506-59.

jury Mr. Frazier's many prior violent convictions, and did provide ample testimony of Mr. Frazier's propensity to lie.

Nevertheless, for whatever reasons, these efforts were apparently not sufficient for the jury to switch the blame for the actual killing from Mr. Fennie to Mr. Frazier.  Moreover, this apparent inability of the jury to find Mr. Frazier, as opposed to Mr. Fennie, to be the true perpetrator (as the collateral defense claims) cannot properly be laid at the feet of trial defense counsel.  And for the various reasons set forth previously in this order, it is clear that trial practice is an art and not a series of scientific check lists guaranteed to spawn an exact result.  Collateral defense counsel's accusations against trial defense counsel are mere allegations, not supported by the record or matters brought out in the evidentiary hearing.  Accordingly, this Court does not find that collateral defense counsel has met their burden of showing that trial defense counsel rendered ineffective assistance of counsel by virtue of their alleged failure to be prepared for the cross examination of Mr. Frazier during the murder trial.

Fennie's defense employed at trial, one that he still advances, is that Frazier shot the victim.  As a consequence, trial counsel's strategy, one that Fennie still advances, was to "point the finger" at Frazier and attack Frazier's credibility.  In both his post-conviction petition and his federal petition, Fennie contends that trial counsel failed to utilize—either due to a lack of preparation or omission during trial—additional attacks on Frazier's credibility.  Ineffective assistance is not proven by showing that additional attacks were possible and that "counsel could have done more."  "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . .  [T]he issue is not what is possible or what is prudent or appropriate, but only what is constitutionally compelled."  Chandler v. United States, 218 F.3d at 1313.

The state post-conviction judge rejected Fennie's attack on trial counsel's lack of preparation and ruled that trial counsel was adequately prepared for Frazier's testimony because trial counsel (1) knew of Frazier's personal involvement in the crime spree, as

opposed to the prosecution's identifying a witness previously unknown to trial counsel, (2) knew for months that the prosecution was attempting to arrange for Frazier's testimony against Fennie, (3) videotaped Frazier's testimony at his trial, and (4) deposed Frazier before jury selection finished.

The state post-conviction judge rejected Fennie's attack on trial counsel's allegedly deficient cross-examination and ruled that, despite Fennie's identified omissions of possible additional attacks on Frazier's credibility, trial counsel's cross-examination of Frazier was not ineffective assistance of counsel.  Fennie identifies three specific omissions during Frazier's cross-examination.

First, Fennie faults trial counsel for not pursuing Frazier's response that he had no conviction for a violent crime, whereas at the post-conviction evidentiary hearing Fennie supplied a police report detailing an armed robbery Frazier committed and for which Frazier supplied the guns.  Frazier admitted during cross-examination that he gets money by committing crimes, such as robbery.  (Respondent's Exhibit A-12 at 1511) Ineffective assistance of counsel is not proven by simply showing that counsel "could have done more."

Second, Fennie faults trial counsel for not presenting the testimony of Dwayne Jones, who was Frazier's accomplice in the armed robbery described above.  Jones testified at the evidentiary hearing that Frazier is known to carry a gun and has a bad temper when on drugs, whereas he has never witnessed violence from Fennie.  The post-conviction judge rejected Jones's credibility.  (Respondent's Exhibit C-21 at 3625) Baldwin v. Johnson, 152 F.3d 1304, 1316 (11th Cir. 1998) (A federal habeas court

"must accept the state court's credibility determination . . . ."), <u>cert.</u> <u>denied</u>, 526 U.S. 1047 (1999).

Third, Fennie faults trial counsel for not effectively cross-examining Frazier about the time that elapsed between the kidnapping and the murder.  Fennie contends that trial counsel should have used a map to show the location of the kidnapping, the location of the banks where Fennie and Frazier attempted to use the victim's bank cards, and the location of the home of co-defendant Colbert, who drove the vehicle to the scene of the murder.  Fennie argues that the use of a map was especially important because the trial occurred in Hernando County and no juror was questioned during voir dire about familiarity with Tampa.  At the post-conviction evidentiary hearing, trial counsel admitted that a map would have discredited Frazier's claim that the first bank, at which they tried to withdraw cash, was "on the other side of town."  Although this suggests the defense "could have done more," Fennie fails to show that this incremental attack on Frazier's credibility would cause the jury to reject Frazier's "pointing the finger" at Fennie as the shooter, although several other attacks on Frazier during the trial failed to do so.

The post-conviction judge ruled that Fennie failed to meet his burden of proving that trial counsel rendered ineffective assistance.  Although Fennie identifies two instances in which trial counsel "could have done more," Fennie fails to show that the state court ruling was an unreasonable application of <u>Strickland</u>.  The record supports the state court's determination that trial counsel was not ineffective; "the adversarial process at trial, in fact, worked adequately."  <u>White v. Singletary</u>, 972 F.2d at 1221.

<u>2.  Ineffective Cross-examination and the Failure to Call Two Witnesses</u>

First, Fennie faults trial counsel for not effectively cross-examining three witnesses, John Shearin (the victim's husband), Ansell Rose (the passenger when Fennie was arrested driving the victim's car), and Regina Rogers (Frazier's girlfriend). The state post-conviction judge rejected this claim (Respondent's Exhibit C-21 at 3620-22):

> [C]ollateral defense counsel argues that trial defense counsel rendered ineffective assistance of counsel . . . based on trial defense counsel's alleged failure to call various witnesses, and their alleged failure to properly cross examine various witnesses.  The Court finds that collateral defense counsel's arguments fail here for many of the various reasons previously given and stated herein.  Collateral defense counsel takes minute conflicts in the evidence and then tries to build them into something much larger. Collateral defense counsel then speculates that if this matter had been brought out by trial defense counsel, that the trial jury would have been duly impressed, and that the result would have been different.  The Court finds for the reasons set forth herein that this process is pure speculation and conjecture and without an adequate legal foundation.

> Collateral defense counsel faults trial defense counsel for failing to cross examine Mr. Shearin, the husband of the victim, on the time frame.  There is apparently an approximately thirty minute time difference between when Mr. Shearin said that his wife left the home, and what was testified to by Mr. Frazier as to the time that the victim approached him.  Collateral defense counsel makes a great deal out of this difference, but the Court believes, upon reflection and review, that this difference is largely unimportant. Collateral defense counsel's arguments and effort in this regard are largely inferences based on inferences, and extremely speculative and conjectural in nature and scope.  The Court finds and assigns very little weight to collateral defense counsel's arguments on this issue.

> Collateral defense counsel next criticizes trial defense counsel's cross examination of Ansel Rose during the trial.  Collateral defense counsel argued that there was significant differences between what Mr. Rose testified to at trial, and what Mr. Rose testified to in a pre-trial statement given close to the time of the arrest of the defendants.  Collateral defense counsel speculates that had the difference concerning how the gun was found in the victim's car been brought out during trial, that this difference would have impressed the jury and sparked a different result.  The Court

has reviewed the statements made by Mr. Rose at trial and compared them with the statements made by Mr. Rose at pre-trial.  While there are clearly differences, the Court finds that the differences are not that great and are not especially significant.  Ansel Rose testified in an essentially similar fashion both before trial and at trial, and the trial defense counsel's cross examination of Mr. Rose was at least adequate.  Accordingly, the Court cannot find on this issue that trial defense counsel's representation was ineffective assistance of counsel.

Collateral defense counsel's next point on this issue is that trial defense counsel failed to properly question and cross examine Regina Rogers, co-defendant Frazier's girlfriend.  Of particular import to collateral defense counsel is the fact that trial defense counsel allegedly failed to properly bring out the significance of the altercation between Ms. Rogers and co-defendant Frazier, which altercation was the subject of a Tampa Police Department report.  Collateral defense counsel argues that had this matter been properly presented to the jury, that the jury could have clearly seen Mr. Frazier and not Mr. Fennie was the more violent person, and that, in particular, would have found that Mr. Frazier had a propensity for violence toward women.  Again, the Court has looked closely at this issue, and does not reach the same conclusion as collateral defense counsel.  Specifically, the Court finds that during cross examination that trial defense counsel did question Regina Rogers on the issue of the altercation contained in the Tampa Police Department report.  While trial defense counsel may not have emphasized the issues that collateral defense counsel in hindsight now believes were most appropriate, the Court cannot find at this time that the cross examination and questioning of Regina Rogers was ineffective assistance as a matter of law.  Trial defense counsel did have the Tampa Police Department report at issue, and did question the witness regarding same.  Any spectacular result that collateral defense counsel would claim from a different or more thorough questioning on the report is merely speculative and conjectural.

The post-conviction judge reasoned that the time discrepancy between the testimonies of Frazier and the victim's husband was insignificant.  Fennie argues that the discrepancy still permitted an attack on Frazier's credibility if trial counsel had developed the issue more thoroughly.  Trial counsel testified at the post-conviction evidentiary hearing that attacking the victim's husband would have risked offending the jury, especially on an unimportant detail.  (Respondent's Exhibit C-28 at 720)  The

post-conviction judge found "the differences [in Rose's testimony] . . . not that great and . . . not especially significant,"[16] a determination that is supported by the record.  Lastly, Fennie contends that trial counsel failed to effectively cross-examine Rogers regarding Frazier's violence toward her.  In deposition, Rogers claimed that the altercation revealed to the jury was Frazier's first episode of violence directed at her.  However, the police report possessed by trial counsel showed a prior incidence of violence between them.  Fennie claims that proper impeachment would have challenged Rogers's credibility and showed Frazier is violent toward women.  On cross-examination trial counsel succeeded in getting Rogers to admit that she avoided provoking Frazier because she was "afraid he'd hit [her] back."  (Respondent's Exhibit A-13 at 1693)  Fennie's complaint is merely another example of the claim that counsel "could have done more."

Counsel's decision to cross-examine and counsel's decision on the manner of the cross-examination are strategic decisions entitled to deference.  Dorsey v. Chapman, 262 F.3d 1181 (11th Cir. 2001), cert. denied 535 U.S. 1000 (2002).  The only question is whether counsel's strategic decision was "reasonable."  Minton v. Sec'y, Dep't of Corr., 271 Fed. Appx. 916, 918 (11th Cir. 2008) ("The Supreme Court has 'declined to articulate specific guidelines for appropriate attorney conduct and instead has emphasized that the proper measure of attorney performance remains simply

---

[16]   Rose was a "hitchhiker."  He was released when the police verified that he was not involved in the murder.  One detective reported that, when interviewed, Rose stated that Fennie removed something from his back pocket and tried to hide it when the police were stopping the car.  Another detective reported that Rose identified the item as a gun.  Neither report disclosed Rose's claim, included in his trial testimony, that Fennie tried to hide the item under the floor mat.  Police recovered the murder weapon from beneath the front, driver's-side floor mat.  (Respondent's Exhibit A-10 at 1180)

reasonableness under prevailing professional norms.'") (quoting <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003)).  The post-conviction judge reasonably applied <u>Strickland</u> by deferring to trial counsel's strategic decision.

Second, Fennie faults trial counsel for not presenting Dr. Martin and co-defendant Colbert as witnesses.  The state post-conviction judge rejected this claim (Respondent's Exhibit C-21 at 3622-23):

Collateral defense counsel next faults trial defense counsel . . . [for] fail[ing] to call as an expert witness, Dr. Kenneth Martin, D. D. S., regarding a bite mark found on Mr. Frazier's hand.  Collateral defense counsel argues that had Dr. Martin been called, his testimony would have demonstrated that it was likely that [the victim] bit Mr. Frazier and that "the bite mark was consistent with Mr. Frazier's hand coming from behind [the victim] in an upright position and being placed against her mouth, and that the bruising on the bite was an aggressive defense-type bite."  Mr. Fanter had taken Dr. Martin's deposition at pre-trial and was aware of Dr. Martin's testimony. The State decided not to use Dr. Martin's testimony at trial.  Collateral defense counsel says that trial defense counsel was ineffective for failing to call Dr. Martin for the purpose indicated above, that is, to show Frazier as the more aggressive person and the one with more of a motive to kill. Again, collateral defense counsel places great weight on tiny differences in the evidence.  Based on the alleged accuracy of their hindsight, collateral defense counsel believes that had trial defense counsel acted in comportment with the arguments of collateral defense counsel, that the result would have been very different.  Again, this involves a tremendous leap of faith, and from the Court's perspective, it is sheer speculation and conjecture.  The Court finds that the testimony of Dr. Kenneth Martin was not a significant issue upon . . . which the defense could build a solid case. It is certainly possible that Dr. Martin could have been called as a witness, and, assuming that he testified the same as he did in deposition, that certainly an argument could have been made by trial defense counsel that could have possibly helped shift the blame for the actual killing to Mr. Frazier.  Nevertheless, such extrapolation is pure speculation.  Trial defense counsel was aware of Dr. Martin, as they had taken his deposition. For reasons of trial strategy, trial defense counsel decided not to call Dr. Martin, as they apparently did not believe that his testimony was worth using, based on their strategic decisions and plan for the trial at that time.

Collateral defense counsel next attacks trial defense counsel for . . . fail[ing] to call Pamela Colbert, a co-defendant, as a witness during Mr. Fennie's

trial.  The defendant's position is that Pam Colbert would have indicated that Mr. Frazier, rather than Mr. Fennie, did the actual shooting.  Pam Colbert had given conflicting testimony in regards to who was the actual shooter.  At times she would indicate that both Mr. Frazier and Mr. Fennie went down the path with the victim where a popping sound was heard; other times she would indicate that she and Mr. Frazier remained by the car and that only Mr. Fennie took the victim down the path where a popping sound was heard.  Mr. Fanter indicated at the evidentiary hearing that he was in constant touch with Ms. Colbert's defense counsel, . . . both personally and through his investigator . . . .  Mr. Fanter testified at the evidentiary hearing that he made an informed decision not to call Pamela Colbert as a defense witness because he was uncertain as to what her testimony might be.  Moreover, Mr. Fanter had been warned that Ms. Colbert's testimony might "put your client in the electric chair."  Therefore, Mr. Fanter continually ascertained as to whether the testimony of Pamela Colbert would be helpful to Mr. Fennie, and when he found that it would not, he decided not to call Ms. Colbert in this case. This Court cannot find fault with this strategic decision.  Ms. Colbert was an unpredictable witness, and while if she said some things, her testimony might help Mr. Fennie to some extent; other testimony she might give could condemn him.  No testimony ever given by Ms. Colbert was truly exculpatory.  Accordingly, the Court cannot find that there was ineffective assistance of counsel in regard to Mr. Fanter's strategic trial decision at trial not to call Ms. Colbert as a witness.

For both witnesses, Dr. Martin and co-defendant Colbert, trial counsel determined that, for strategic reasons, he chose not to present the testimony of either witness.  The post-conviction judge's deference to trial counsel's strategic decisions conforms with Strickland.  See, e.g., Dingle v. Sec'y, Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("Even if counsel's decision [to not call a certain witness] appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it.") (internal quotations omitted); Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.") (en banc); Blanco v.

Singletary, 943 F.2d 1477, 1495 (11th Cir. 1991) ("The decision as to which witnesses

to call is an aspect of trial tactics that is normally entrusted to counsel.").

Moreover, the defense strategy included not presenting evidence so counsel

could acquire the advantage of first and last closing arguments.[17]  Presenting the

testimony of either Dr. Martin or co-defendant Colbert, as opposed to presenting only

the defendant's testimony, would have lost that advantage.[18]

3.  Fennie's Testimony

Fennie alleges that trial counsel was ineffective for not calling Fennie as a witness

during the guilt phase.  The post-conviction judge rejected this claim (Respondent's

Exhibit C-21 at 3623-24):

> Finally, collateral defense counsel faults trial defense counsel for their
> failure to call Mr. Fennie as a witness at trial, indicating that Mr. Fennie's
> testimony would not cause them to lose first and last argument during
> closing.  Moreover, collateral defense counsel indicates that Mr. Fennie
> wanted to testify, and that his testimony would have been more
> favorable than harmful at trial.  At the evidentiary hearing, Mr. Fanter indicated that he
> continually communicated with the defendant as to whether he wished to
> testify or not.  Mr. Fanter indicated that he [was] well aware of his ethical
> obligation in this regard and continually advised and informed the defendant
> as to his right to testify, as well as to the pros and cons of his testifying.  Mr.
> Fanter testified that when the time finally came for defendant to testify, that
> the defendant said that he did not want to testify; Mr. Fanter honored that
> wish.  While it is true that after the trial that Mr. Fennie made a written
> statement to the trial court indicating that he had wanted to testify at trial but
> had been denied that opportunity, this Court finds such self serving
> statements not to be credible, and gives them little weight.  Accordingly, it
> appears that Mr. Fanter was replete in his ethical obligations in regards to

---

[17]  Trial counsel withdrew his request to have Frazier show the jury the bite marks because the trial court ruled that the exhibition would be a presentation of evidence.  (Respondent's Exhibit A-12 at 1557-58)

[18]  When Fennie's trial occurred in 1992, Rule 3.250, Fla. R. Crim. P., permitted a defendant first and last closing arguments if he presented no evidence other than his own testimony.  In 2007 Rule 3.381, Fla. R. Crim. P., eliminated the possibility for a defendant to have first and last closing arguments.

allowing Mr. Fennie to testify or not.  Mr. Fanter cannot be properly faulted for not calling the defendant to testify during the trial, when the testimony of Mr. Fanter is that the defendant indicated at that time that he did not want to so testify.

The state post-conviction judge's denial of Fennie's substantive claim—that

Fennie was denied his right to testify—contains additional findings relevant to the

related claim of ineffective assistance of counsel (Respondent's Exhibit C-21 at 3629):

The defendant claims that his various constitutional rights were violated when over his alleged objection, he was not allowed to testify at trial in his own behalf.  This issue has been previously discussed before in this order, and the Court relies on those previous comments.  Moreover, because of the fact that this matter has been discussed before, the Court will not go into great detail here in regards to the same issue.

It is clear that the defendant did not testify at his trial.  It is also clear that the defense went to great lengths to preserve that strategic decision by having at least one of those discussions preserved in the record by the court reporter.  It is also clear that the defendant did not testify at his evidentiary hearing, even though he was again offered the opportunity.

At the evidentiary hearing, the defense team of Fanter and Lee discussed the decision that was made in determining that the defendant would not testify.  They indicated that they fully and thoroughly discussed this issue with the defendant on a number of occasions throughout the proceedings and the trial.  Trial defense counsel testified that they were fully aware that it was the defendant's choice, and that they were aware of their ethical obligations in regard thereto.  Trial defense counsel further testified at the evidentiary hearing that they were opposed to having the defendant testify for a number of reasons, but that the defendant initially wanted to testify.  However, trial defense counsel testified at the evidentiary hearing that when push came to shove, that the defendant freely and voluntarily decided not to testify.

The Court has reviewed all of the testimony and argument on this issue.  After such a review, this Court finds that the defendant made a fully informed, knowing, intelligent, voluntary, and strategic decision not to testify.  Trial defense counsel was not deficient on this issue in any manner, and neither prong of <u>Strickland</u> has been met.  Accordingly, the defendant's request for relief on this issue based on ineffective assistance of counsel and/or for constitutional violations is denied.

Fennie waived testifying during his trial and chose not to testify at the state post-conviction evidentiary hearing.  As a consequence, the only credible evidence[19] addressing this claim is trial counsel's testimony during the evidentiary hearing and a transcript of Fennie's conversation with counsel in which they discussed whether Fennie would testify.[20]  Trial counsel testified that when they reached the deadline for deciding whether Fennie would testify, Fennie chose not to testify.  "He decided not to.  Had he wanted to testify, he would have testified."  (Respondent's Exhibit C-28 at 656)  Trial counsel would have presented Fennie's testimony if Fennie had chosen to testify. (Respondent's Exhibit C-28 at 730-31)  Fennie was still undecided whether he would testify, even though the state had called its last witness.  During a recess at the conclusion of the state's case, the court reporter, at trial counsel's request, transcribed the following conversation between Fennie and his two attorneys (Respondent's Supplemental Exhibit E-1 at 15 and 19, Doc. 20):

> Mr. Fanter:  What about whether or not you're going to testify, have you made your decision?
>
> Mr. Fennie:  Well, this is something that I'm deciding on.
>
> . . . .
>
> Mr. Fanter:  As far as your testifying, we will get to that later when it's the appropriate time.
>
> Mr. Fennie:  Okay,

---

[19]  In a credibility determination binding on habeas review, the post-conviction judge rejected the credibility of Fennie's letter, which alleges that trial counsel prevented his testifying.  Baldwin v. Johnson, 152 F.3d 1304, 1316 (11th Cir. 1998).

[20]  During a lunch recess before the prosecution rested, trial counsel utilized the court reporter to record counsels' consultation with Fennie about presenting a defense witness.

> Mr. Fanter:  It's both Hugh's and my decision, based on your prior record and how the suppression hearing went, that we would rather argue your taped statement which has been indicated as the most truthful statement you made and we prepared along those lines now and not have you testify. That's just our opinion.  It's your constitutional right to determine whether or not you want to testify or not, okay, but we can prepare --- basically I feel It would be in your best interest not to testify.  But again, when we get to that point it will be your call so to speak.  Okay.

> Mr. Fennie:  Okay.

> Mr. Fanter:  Do you understand me?

> Mr. Fennie:  Yes.

> Mr. Fanter:  Any other questions for me at this point?

> Mr. Fennie:  No.

Soon after trial Fennie wrote to the trial judge and complained that trial counsel prevented his testifying.  As a consequence, both trial counsel wrote a memorandum to the file memorializing their discussions with Fennie.  Alan Fanter's memorandum, in relevant part, reads (Respondent's Supplement Exhibit E-2, Doc. 20):

> In response to the defendant's letter to the court, I can simply say the following:

> That there is absolutely no question Mr. Fennie had the opportunity and the right to testify; this was made expressly clear to him prior to, during the trial, and at the appropriate time when it would have been time for him to testify.

> Obviously Mr. Fennie had at least 24 felony convictions, several petit theft convictions, and it was my opinion that he shouldn't testify, but that option was in fact given to him; he made his decision not to testify.  Nobody stopped him, forced him or pressured him not to testify.

Mr. Hughes's memorandum reads (Respondent's Supplement Exhibit E-3, Doc. 20):

> This memo [is] in response to [the] Defendant's letter to the Judge after sentencing.

Defendant complained that his attorneys wouldn't let him testify. Conversations were had with Defendant about the advisability of testifying. It was agreed by everyone that Defendant would not testify. In hindsight, it couldn't really have hurt the Defendant. There is absolutely no way that it could have helped.

There were no witnesses that could have benefitted Defendant. The Co-Defendant Colburn [sic] was questioned by investigator Dave Franklin and her testimony would have further inculpated Alfred Fennie.

In summation, the defense was placed in the position of defending a man who consistently lied to his attorneys and staff, refused to accept a plea that would have saved his life, and was ultimately convicted and sentenced to die due to the horrible facts of the case. We did our best. It just couldn't prevail over the facts.

Because Fennie chose not to testify at the evidentiary hearing, the uncontroverted evidence supports the state court's rejection of Fennie's claim that counsel's ineffectiveness denied him the right to testify.

\* \* \*

Fennie fails to prove that he was denied the effective assistance of counsel during the guilt phase. Fennie's allegations, both individually and collectively, lack merit. The state post-conviction judge concluded correctly (Respondent's Exhibit C-21 at 3624):

In conclusion, upon reviewing all of the factors raised by collateral defense counsel in their amended Claim VII, raising alleged issues of ineffective assistance of trial defense counsel during the guilt phase of the trial, this Court finds that collateral defense counsel has failed to meet either prong of Strickland regarding these alleged issues of ineffective assistance of counsel. Thus, the defendant's claim for ineffective assistance of counsel in regards to these issues is denied.

Fennie fails to show that the state court unreasonably applied Strickland or unreasonably determined the facts. Consequently, ground IV lacks merit.

- 35 -

**Penalty Phase Issues**

Fennie presents five grounds that involve the penalty phase.  The first two grounds (I and II) challenge two of the aggravating circumstances that support his death sentence.  The third and fourth grounds (X and XVIII) involve the prosecution's alleged use of a non-statutory aggravating circumstance.  The last ground (VII) challenges the prosecutor's allegedly improper comments during closing arguments in the penalty phase.

## Ground I

In violation of the Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution, the trial court erred in refusing to give limiting instructions and instead reading the unconstitutionally vague standard jury instructions as to the heinous, atrocious, and cruel aggravator in violation of *Espinosa v. Florida* and the cold, calculated and premeditated aggravator in violation of *Hodges v. Florida.*

## Ground II

The statutory aggravating factor of an especially heinous, atrocious, and cruel murder is unconstitutionally vague and overbroad under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

Grounds I and II present three claims.  The first ground challenges the jury instructions for both the "heinous, atrocious, and cruel" ("HAC") aggravator and the "cold, calculated, and premeditated" ("CCP") aggravator.  The second ground challenges the constitutionality of the HAC aggravator.  This order first addresses the two challenges to the HAC aggravator and next addresses the challenge to the CCP aggravator.

- 36 -

1.  HAC

Fennie alleges that the HAC aggravator is unconstitutionally vague and, as read to the jury, was inadequately narrowed by a limiting construction. The jury was charged as follows (Respondent's Exhibit A-15 at 2142-43):

> The aggravating circumstances that you may consider are limited to any of the following that are established by the evidence. . . .  Number four, the crime for which the defendant is to be sentenced was especially heinous, atrocious, or cruel.  Heinous means extremely wicked or shockingly evil. Atrocious means outrageously wicked and vile.  Cruel means designed to inflict a high degree of pain with utter indifference to or even enjoyment of the suffering of others.  The kind of crime intended to be included as heinous, atrocious or cruel is one accompanied by additional acts that show that the crime was conscienceless or pitiless and was unnecessarily torturous to the victim.

Fennie contends that the instruction read to the jury failed to adequately guide their sentencing recommendation.  Fennie I, 648 So. 2d at 98, rejected these claims:

> Fennie claims that the court erred in denying his request for expanded penalty-phase instructions on the heinous, atrocious, or cruel . . . aggravating factors.  He claims the instructions suffer the same constitutional infirmities as the instructions challenged in Espinosa v. Florida, 505 U.S. 1079, 112 S. Ct. 2926, 120 L. Ed. 2d 854 (1992) . . . .  In particular, he asserts that the instructions given were unconstitutionally vague in that they did not adequately limit the jury's discretion.
>
>  We find no merit to Fennie's claims regarding the heinous, atrocious, or cruel instruction or the aggravator itself, because the instruction provided mirrors the one that we upheld in Hall v. State, 614 So. 2d 473 (Fla.), cert. denied, 510 U.S. 834, 114 S. Ct. 109, 126 L. Ed. 2d 74 (1993).  As we stated in Hall, "the instruction defines the term sufficiently to save both the instruction and the aggravator from vagueness challenges." Id. at 478. Moreover, the record in this case supports a finding that the heinous, atrocious or cruel aggravating factor was established beyond a reasonable doubt under any definition of the terms.  Therefore, we also reject Fennie's claim that there was insufficient evidence to support a finding that the murder was heinous, atrocious, or cruel.

Fennie erroneously claims that the instruction provided his jury suffers the same defect condemned in Espinosa v. Florida, 505 U.S. 1079 (1992).  However, Fennie's jurors received an expanded instruction that defines the HAC terms; Espinosa condemns an instruction without the HAC definitions.  Fennie's jury received the same "narrowly construed" aggravator approved in Hall v. State, 614 So. 2d 473 (Fla.), cert. denied, 510 U.S. 834 (1993).

The jury in Bell v. Cone, 543 U.S. 447, 457-58 (2005), received a nearly identical instruction,[21] which was upheld as providing adequate guidance.

> The only remaining question is whether the narrowing construction that the Tennessee Supreme Court applied was itself unconstitutionally vague. [citations omitted]  It was not.  In State v. Dicks, 615 S.W.2d 126 (Tenn. 1981), the state court adopted the exact construction of the aggravator that we approved in Proffitt [v. Florida], 428 U.S. [242] at 255, 96 S. Ct. 2960: that the aggravator was "directed at 'the conscienceless or pitiless crime which is unnecessarily torturous to the victim,'" Dicks, supra, at 132. See also Sochor v. Florida, 504 U.S. 527, 536, 112 S. Ct. 2114, 119 L. Ed. 2d 326 (1992).  In light of Proffitt, we think this interpretation of the aggravator, standing alone, would be sufficient to overcome the claim that the aggravating circumstance applied by the state court was "contrary to" clearly established federal law under 28 U.S.C. § 2254(d)(1).

Because he fails to cite Supreme Court precedent that invalidates the expanded instruction his jury received, Fennie cannot meet Section 2254(d)'s "contrary to" test, and Cone precludes Fennie's meeting the "unreasonably applied" test.

---

[21]   "The jury was instructed with respect to this aggravated circumstance as follows:  'Heinous' means extremely wicked or shockingly evil.  'Atrocious' means outrageously wicked and vile.  'Cruel' means designed to inflict a high degree of pain, utter indifference to, or enjoyment of, the suffering of others, pitiless."  Cone, 543 U.S. at 452 (internal quotations omitted).

2.  CCP

Fennie alleges that the CCP aggravator is unconstitutionally vague and

inadequately narrowed by a limiting construction. The jury was charged as follows

(Respondent's Exhibit A-15 at 2142-43):

> The aggravating circumstances that you may consider are limited to any of
> the following that are established by the evidence. . . .  Number five, the
> crime for which the defendant is to be sentenced was committed in a cold,
> calculated, and premeditated manner without any pretense of moral or legal
> justification.  Cold means without emotion or passion.  Calculated means a
> careful plan or prearranged design.

Fennie contends that the jury instruction failed to adequately guide the jury in

determining a sentencing recommendation.  Fennie I, 648 So. 2d at 98-99, addressed

the first part of this claim as follows:

> Fennie claims that the court erred in denying his request for expanded
> penalty-phase instructions on the . . . cold, calculated, and premeditated
> aggravating factors.  He claims the instructions suffer the same
> constitutional infirmities as the instructions challenged in . . . Hodges v.
> Florida, 506 U.S. 803, 113 S. Ct. 33, 121 L. Ed. 2d 6 (1992).  In particular,
> he asserts that the instructions given were unconstitutionally vague in that
> they did not adequately limit the jury's discretion.
>
> . . . .
>
> The cold, calculated, and premeditated instruction provided by the trial
> court merits further discussion in light of our decision in Jackson v. State,
> 648 So. 2d 85 (Fla. 1994).  In Jackson, we determined that the United
> States Supreme Court decisions in Espinosa and Hodges necessitated
> reconsideration of Florida's standard cold, calculated, and premeditated
> instruction.  We held, and now reaffirm, that the cold, calculated and
> premeditated aggravator is constitutional.  Jackson, 648 So. 2d at 87.  Our
> evaluation of the instruction, however, revealed that it left the sentencer
> without sufficient guidance for determining the presence or absence of the
> factor.  Jackson, 648 So. 2d at 89 (citing Espinosa, 112 S. Ct. at 2928).
> Accordingly, we held that the instruction was unconstitutionally vague and
> recommended the use of a more expansive instruction defining each
> element of the aggravator. [FN8]

> FN8.  In <u>Jackson</u>, we recommended that the following instruction be used until a new standard jury instruction is adopted:
>
>> The crime for which the defendant is to be sentenced was committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification.  In order for you to consider this aggravating factor, you must find the murder was cold, calculated, premeditated, and that there was no pretense of moral or legal justification.  "Cold" means the murder was a product of calm and cool reflection.  "Calculated" means defendant had a careful plan or prearranged design to commit the murder. "Premeditated" means the defendant exhibited a higher degree of premeditation than that which is normally required in a premeditated murder.  A "pretense of moral or legal justification" is any claim of justification or excuse that, though insufficient to reduce the degree of homicide, nevertheless rebuts the otherwise cold and calculating nature of the homicide.

648 So. 2d at 89 n.8.

As was the case in <u>Jackson</u>, we are able to address the merits of this claim because Fennie requested an alternative instruction and pursued his objection here.  <u>See</u> <u>Jackson</u>, 648 So. 2d at 89;  <u>James v. State</u>, 615 So. 2d 668, 669 & n.3 (Fla. 1993).  Despite Fennie's request for an alternative instruction, the trial judge instructed the jury as follows:

> The crime for which the defendant is to be sentenced was committed in a cold, calculated and premeditated manner without pretense of moral or legal justification.  "Cold" means without emotion or passion.  "Calculation" means a careful plan or prearranged design.

This instruction fails to inform the jury that some form of "heightened" premeditation is necessary to find that the murder is cold, calculated, and premeditated.

After determining that the CCP instruction read to Fennie's jury was

unconstitutionally vague, <u>Fennie I</u>, 648 So. 2d at 99, held that the error was harmless.

While we agree that the trial court erred in failing to provide an expanded instruction, we conclude that such error was harmless.  <u>State v. DiGuilio</u>,

491 So. 2d 1129 (Fla. 1986).  Harmlessness exists if the record supports a finding that the murder was, beyond a reasonable doubt, cold, calculated, and premeditated without any pretense of moral or legal justification under any definition of those terms.  Henderson v. Singletary, 617 So. 2d 313 (Fla.), cert. denied, 507 U.S. 1047, 113 S. Ct. 1891, 123 L. Ed. 2d 507 (1993).  The record in this case reveals that all four of these elements would exist even if the proper instruction had been given.

First, the deliberate nature of Fennie's actions establish that the murder was not prompted by emotional panic or a fit of rage.  Rather, Fennie's murder of Shearin was a protracted execution-style slaying which is by its very nature cold.  Fennie's actions also establish the existence of a careful plan or prearranged design.  After forcing Shearin into the trunk at gunpoint, Fennie made several stops to obtain the accoutrements necessary to drown her.  Fennie also informed Frazier and Colbert that he planned to drown the victim but later told them he intended to shoot her instead.  To carry out his plan and avoid detection, Fennie brought Shearin to a location where the gunshot would not be heard.  The lengthy and drawn out nature of this crime clearly indicates Fennie carefully contemplated his actions prior to the fatal incident.

The lengthy nature of the crime also goes to the heightened premeditation necessary to establish this aggravating factor.  Fennie kept the victim waiting for her ultimate fate while he contemplated various methods of execution.  His actions, therefore, exude the deliberate ruthlessness necessary to raise his premeditation above that generally required for premeditated first-degree murder.  His actions clearly do not demonstrate any pretense of legal or moral justification.  See Band v. State, 536 So. 2d 221, 225 (Fla. 1988) (defining a pretense of moral or legal justification as any "claim of justification or excuse that, though insufficient to reduce the degree of homicide, nevertheless rebuts the otherwise cold and calculating nature of the homicide"), cert. denied, 489 U.S. 1087, 109 S. Ct. 1548, 103 L. Ed. 2d 852 (1989).

As all four elements of this aggravator are clearly present, we reject Fennie's claim that the cold, calculated, and premeditated aggravator does not apply in this case.  We further find, that even if the cold, calculated, and premeditated aggravator was impermissibly considered, it would have been harmless error.  The totality of the aggravating factors and the lack of significant mitigating circumstances conclusively demonstrate that death is the appropriate penalty in this case.

Fennie I determined that, although the jury instruction was unconstitutionally

vague, the error is harmless because the CCP aggravator is proven "beyond a

reasonable doubt" even applying the requirement for heightened premeditation.  The

Florida supreme court was not unreasonable in applying a narrowing construction to the

CCP aggravator.

> [A] weighing-state death sentence would satisfy the Eighth Amendment so
> long as the vague aggravator was narrowed at some point in the process.
> Additionally, in the course of our opinion, we characterized Clemons as
> follows:
>
>> [E]ven if a trial judge fails to apply the narrowing construction or
>> applies an improper construction, the Constitution does not
>> necessarily require that a state appellate court vacate a death
>> sentence based on that factor.  Rather, as we held in Clemons
>> v. Mississippi, 494 U.S. 738, 110 S. Ct. 1441, 108 L. Ed. 2d
>> 725 (1990), a state appellate court may itself determine
>> whether the evidence supports the existence of the aggravating
>> circumstance as properly defined or the court may eliminate
>> consideration of the factor altogether and determine whether
>> any remaining aggravating circumstances are sufficient to
>> warrant the death penalty.

Lambrix v. Singletary, 520 U.S. 518, 537 (1997), quoting Walton v. Arizona, 497 U.S.

639, 653-54 (1990).  Consequently, the CCP was proven even with a narrowed

construction.  But Fennie I went further by re-weighing the remaining aggravators and

determined that the death sentence is appropriate even if the CCP aggravator was

invalid.  See Brown v. Sanders, 546 U.S. 212, 217 (2006) ("In a weighing State,

therefore, the sentencer's consideration of an invalid eligibility factor necessarily skewed

its balancing of aggravators with mitigators, Stringer [v. Black], 503 U.S. [222], 232

[(1992)] . . . required reversal of the sentence (unless a state appellate court determined

the error was harmless or re-weighed the mitigating evidence against the valid

aggravating factors), ibid."); Parker v. Dugger, 498 U.S. 308, 319 (1991) ("In a weighing State, when a reviewing court strikes one or more of the aggravating factors on which the sentencer relies, the reviewing court may, consistent with the Constitution, re-weigh the remaining evidence or conduct a harmless error analysis.").  The Florida supreme court's applying a harmless error analysis was specifically approved in Jennings v. McDonough, 490 F.3d 1230, 1249-50 (11th Cir. 2007), cert. denied, 552 U.S. 1298 (2008).

> Here, however, we have no trouble concluding that the Florida Supreme Court performed a proper harmless error review.  In its primary holding, the court took the second route endorsed by the Supreme Court in Clemons, finding that "beyond a reasonable doubt . . . the HAC aggravator would have been found with a proper instruction."

Fennie I correctly applied a harmless error analysis.[22]  Fennie fails to show that the state court's decision was either "contrary to" or an "unreasonable application of" controlling precedent.

---

[22] Fennie I, 648 So. 2d at 99, also determined that the jury would have imposed the death sentence even without consideration of the CCP aggravator:

> We further find, that even if the cold, calculated, and premeditated aggravator was impermissibly considered, it would have been harmless error.  The totality of the aggravating factors and the lack of significant mitigating circumstances conclusively demonstrate that death is the appropriate penalty in this case.

Factors in that determination were that the jury unanimously recommended death, the trial judge found four other aggravating circumstances, no statutory mitigating circumstances, and ten non-statutory mitigating circumstances.

Ground X

Mr. Fennie's death sentence is fundamentally unfair and
unreliable, in violation of the Fifth, Sixth, and Eighth
Amendments due to the state's introduction of non-statutory
aggravating factors and the state's arguments upon
non-statutory aggravating factors.  Defense counsel's failure to
object or argue effectively constituted ineffective assistance.

Ground XVIII

Mr. Fennie's constitutional right to a fair trial was denied by the
state attorney's misconduct in repeatedly referring to rape in a
deliberate attempt to arouse the jury's deep-rooted fears of
African-American men.  Trial counsel was ineffective for failing
to object to the state's fundamentally prejudicial arguments.[23]

These two grounds involve the prosecution's alleged use of a non-statutory

aggravating circumstance, specifically rape.  The linchpin of these claims is whether

Fennie's sexual relations with the victim was admissible evidence.  The post-conviction

judge ruled that Fennie failed to show either of Strickland's prongs.  (Respondent's

Exhibit C-16 at 2827)  The state's answer brief on appeal shows thoroughly that the

evidence was admissible and, as a consequence, unobjectionable.  (Respondent's

Exhibit C-34 at 63-69)  Fennie II, 855 So. 2d at 602 n.3, affirmed the post-conviction

court's summary denial, stating:  "With regard to claim (5), we conclude that the trial

court appropriately summarily denied two of Fennie's postconviction claims as both

were either legally insufficient or clearly refuted by the record.  See Gaskin v. State, 737

So. 2d 509, 516 (Fla. 1999)."

---

[23] As written in the petition, this ground repeats the claim alleged in ground X.  Additionally, this
ground is limited to only the claim of ineffective assistance of counsel because the underlying substantive
claim was dismissed as procedurally barred.

Additionally, <u>Fennie II</u>, 855 So. 2d at 609-10 (footnote omitted), determined that

the evidence of sexual relations was admissible.[24]

> With regard to the allegations leveled by the State that Fennie raped the
> victim prior to her death, Fennie has not and cannot show that the State
> argued an uncharged rape as a nonstatutory aggravator, or that the jury
> considered it as such.  The State formed a basis for reference to a sexual
> encounter through the testimony of two witnesses and narrowly focused its
> inquiries regarding the allegation to test the veracity of Fennie's contention
> that he had consensual sexual relations with the victim prior to her death.
> During the penalty phase, the State referenced the sexual conduct in
> closing arguments as part of the larger factual context of the criminal
> episode, and as factual predicate for the aggravating factors of commission
> of a crime to avoid arrest, HAC, and CCP.  Given the factual predicate
> established for the statements and the relevance of the conduct to the
> statutory aggravators, Fennie cannot sustain the argument that a rape
> allegation was advanced as nonstatutory aggravation.  Moreover, Fennie
> cannot demonstrate prejudice stemming from the jury's consideration of the
> sexual contact in the context of the statutory aggravators as the State
> introduced ample evidence in support of the aggravators found by the trial
> judge.

Because the evidence of sexual relations between Fennie and the victim was

admissible, trial counsel was not ineffective for not objecting.  Fennie fails to show that

the state court unreasonably applied <u>Strickland</u> or unreasonably determined the facts.

Ground VII

> In violation of the Fifth, Sixth, and Fourteenth Amendments to
> the United States Constitution, the trial court erred in overruling
> appellant's objection and denying his motion for mistrial when
> the prosecutor commented during his closing argument in the
> penalty phase on appellant's failure to testify.

During closing arguments in the penalty phase of Fennie's trial, defense counsel

urged the jury to follow the recommendation of Frazier's jury and recommend a

---

[24] This analysis was on Fennie's claim of ineffective assistance of appellate counsel, which claim
is discussed later as ground VIII.

sentence of life for Fennie.  In response, the prosecutor distinguished the life sentence for Frazier based on Frazier's testimony at Frazier's trial that Frazier was a mere accomplice and that Fennie was the triggerman.

In ground VII Fennie argues that the prosecutor improperly commented to the jury on Fennie's failure to testify.[25]  A reviewing court must evaluate an allegedly improper comment in the context of both the prosecutor's entire closing argument and the trial as a whole.  United States v. Overton, 134 Fed. App'x 354, 358-59 (11th Cir.),[26] cert. denied, 546 U.S. 953 (2005); Branch v. Estelle, 631 F.2d 1229, 1233 (5th Cir. 1980).  The jury heard the following (Respondent's Exhibit A-15 at 2100-07):

> The defense has presented some mitigating evidence.  One of the things they have presented, actually two different jury recommendations from the two previous trials, from Mr. Frazier and Ms. Colbert, and that I would concede is something that is proven.  It is beyond dispute that the other two juries recommended a life sentence for Mr. Frazier and Ms. Colbert.
>
> The question that I ask you to determine is how much weight are those recommendations to be given?  And when you are considering that question, I ask you to consider some of the salient facts that you heard during the course of this trial.  For example, with regard to Mr. Frazier's recommendation for life, Mr. Frazier told you that he testified before his jury.  They had his testimony to consider when they decided to —
>
> [Objection by defense counsel and side-bar conference]
>
> As I was saying, the trial jury in Mr. Frazier's trial had the benefit of hearing the same testimony, hearing his testimony, at which point they concluded he was guilty of first-degree murder, armed kidnapping, and unarmed robbery.  They had the benefit of the principal instruction which is the law here in Florida.  You may have wondered why the principal instruction was

---

[25]  Fennie raised the substance of this ground on direct appeal, but Fennie I rejected the claim without discussion.  After listing the grounds raised on direct appeal, Fennie I, 648 So. 2d at 97, states, "We find that only five of these claims merit discussion."  The substance of ground VII was not discussed.

[26]  "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  CTA11 Rule 36-2.

being given to you.  Mr. Fennie actually participated in the death of Mary Elaine Shearin, and the robbery of Elaine Shearin, and the kidnapping of Elaine Shearin.  The reason the principal instruction was so important was because understanding that one can be guilty of a crime without actively participating in that crime yourself, simply by assisting the active participant, understanding that, we knew that you would not jump to the conclusion that Mr. Frazier must have actively killed Elaine Shearin simply was of the fact that he was convicted.

After hearing that testimony, after learning about the law pertaining to principals, and after convicting him, that jury came back and made a recommendation for life.

The law here in the State of Florida says that a mitigating circumstance, for a trial jury to consider, is that a defendant is an accomplice in the offense for which he is to be sentenced but the offense was committed by another person and the defendant's participation was relatively minor.

When you consider the weight to assign to that jury's recommendation as to Mr. Frazier, ask yourselves, is it possible that jury came to the conclusion that Mr. Fennie was the active participant and that Mr. Frazier was -- his participation was relatively minor.

Keep in mind when you are considering how much weight to give to that particular jury's recommendation, they didn't make a recommendation as to Mr. Fennie, that was not before them.  The same thing goes as to the recommendation with regard to Ms. Colbert.  The same law pertains to her recommendation as well.

In Fennie's penalty phase, the defense argued the Frazier sentence recommendation as precedent for a similar recommendation for Fennie. Comfortably within the confines of sound practice, the prosecution responded by distinguishing the Frazier recommendation, returned after Frazier testified that he was the accomplice and that Fennie was the triggerman.  Placed in proper context, the prosecutor's oblique reference to Frazier's jury having heard Frazier's testimony is unremarkable and touches a matter that was patently obvious.  With the benefit of hearing and seeing the remarks, the trial judge determined that the prosecutor's argument was not at all a

comment on, or invocation of, Fennie's not testifying, but, rather, a fair response to Fennie's request for a comparable recommendation.

Fundamental fairness precludes a prosecutor from commenting on a defendant's silence at trial. United States v. Robinson, 485 U.S. 25, 32 (1988); Griffin v. California, 380 U.S. 609, 615 (1965). A prosecutor's remark is improper if it is "manifestly intended" as a comment on the defendant's silence or if the remark "would naturally and necessarily be understood by the jury" as a comment on the defendant's silence. Matire v. Wainwright, 811 F.2d 1430, 1435 (11th Cir. 1987). The trial judge determined that the prosecutor had not commented at all on Fennie's choice not to testify. Fennie II tacitly affirmed that determination. "[F]ederal courts must defer to the state court's reasonable factual determinations, even in the case of summary adjudications unaccompanied by any express findings of fact." Dasher v. Att'y Gen., Florida, 574 F.3d 1310, 1314 (11th Cir. 2009). Although offering a different interpretation of the record, Fennie fails to demonstrate that the state court's interpretation and consequent fact finding—that the prosecutor was not commenting at all on Fennie's failure to testify—is not a reasonable determination of the facts. Cf. Renico v. Lett, ___ U.S. ___, 130 S. Ct. at 1865 ("Not only are there a number of plausible ways to interpret the record of Lett's trial, but the standard applied by the Michigan Supreme Court—whether the judge exercised sound discretion—is a general one, to which there is no 'plainly correct or incorrect' answer in this case."). Additionally, Fennie fails to show that the state court's decision is either "contrary to" or an "unreasonable application of" controlling precedent.

**Appellate Issues**

Fennie II, 855 So. 2d at 607, correctly recognized that Strickland governs a claim

of ineffective assistance of appellate counsel.

> To succeed on the ineffective assistance of appellate counsel portion of the
> claim, Fennie must establish that counsel's failure to raise the claim on
> appeal is of "such magnitude as to constitute a serious error or substantial
> deficiency falling measurably outside the range of professionally acceptable
> performance and, second, whether the deficiency in performance
> compromised the appellate process to such a degree as to undermine
> confidence in the correctness of the result." Floyd v. State, 808 So. 2d 175,
> 183 (Fla. 2002) (quoting Pope v. Wainwright, 496 So. 2d 798, 800 (Fla.
> 1986)).  The failure to raise a meritless issue does not constitute ineffective
> assistance of counsel.  See Valle v. Moore, 837 So. 2d 905, 908 (Fla.
> 2002); Chandler v. Dugger, 634 So. 2d 1066, 1068 (Fla. 1994).  In fact,
> appellate counsel is not required to raise every conceivable nonfrivolous
> issue.  See Valle, 837 So. 2d at 908.

In addition to applying Strickland's deficient performance and prejudice test,

Fennie II's analysis is consistent with federal law.  Counsel need not raise every

nonfrivolous issue on appeal.  Jones v. Barnes, 463 U.S. 745 (1983).  See also Smith v.

Robbins, 528 U.S. 259, 288 (2000) ("Notwithstanding Barnes, it is still possible to bring

a Strickland claim based on counsel's failure to raise a particular claim, but it is difficult

to demonstrate that counsel was incompetent [because] . . . 'only when ignored issues

are clearly stronger than those presented, will the presumption of effective assistance of

counsel be overcome.'") (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)).  An

appellate advocate provides effective assistance by "winnowing out" a weaker claim and

focusing on a stronger claim:

> It is difficult to win a Strickland claim on the grounds that appellate counsel
> pressed the wrong legal arguments where the arguments actually pursued
> were reasonable in the circumstances.  We have emphasized that even in a
> death penalty case, counsel must be "highly selective about the issues to

be argued on appeal . . . ."  United States v. Battle, 163 F.3d 1, 1 (11th Cir. 1998).  The district court, having considered the record and [appellate counsel]'s testimony during the state post-conviction proceeding, found that [appellate counsel] had carefully considered many of the claims now raised in appeal, but ultimately chose to pursue the claims he felt were most likely to prevail and winnow out the arguments he thought were less persuasive.

Johnson v. Alabama, 256 F.3d 1156, 1188 (11th Cir. 2001), cert. denied, 535 U.S. 926

(2002).  To summarize, deficient performance is not established merely because

appellate counsel fails on appeal to raise every conceivable issue.

Ground VIII

The prosecutors' inflammatory and improper comments and arguments rendered Mr. Fennie's death sentence fundamentally unfair and unreliable in violation of the Sixth, Eighth, and Fourteenth Amendments.  Appellate counsel was ineffective for failing to raise this claim on direct appeal.

Fennie alleges that appellate counsel rendered ineffective assistance by not

raising on direct appeal four allegedly improper prosecutorial comments, specifically

(1) a reference to "the uncharged rape of the victim," (2) a reference to Frazier's

testifying at each trial but Fennie's testifying at neither, (3) a reference to the

prosecutor's representing the law abiding community and the law's requiring imposition

of a sentence of death, and (4) a reference to the jurors' imagining themselves in the

place of the victim.  Although identifying four allegedly improper comments, Fennie's

petition provides argument on only the last comment, a purported violation of the

"Golden Rule."  Fennie's burden is heightened because trial counsel's objection

preserved only one of the comments—the claim that the prosecutor allegedly

commented on Fennie's failure to testify during the penalty phase, which claim was

discussed earlier at ground VII.  As a consequence, the three remaining challenges

contest comments that were not preserved for appellate review.  Fennie II, 855 So. 2d

at 609-11, holds that appellate counsel was not ineffective because the alleged errors

fail to qualify as "fundamental error," the standard faced by appellate counsel.

> The second habeas claim that we address involves Fennie's contention that
> inflammatory statements by the prosecutor rendered his death sentence
> unconstitutional, and that appellate counsel was ineffective for failing to
> present the issue on appeal.  We address only those aspects of this
> composite claim pertaining to the State's purportedly improper
> advancement of an uncharged rape as nonstatutory aggravation and
> alleged Golden Rule arguments, and deny the balance of the claim as
> meritless. [FN14]

>> FN14. Fennie's allegation pertaining to the introduction of
>> nonrecord evidence in the penalty phase closing argument is
>> contravened by the record.  Fennie is correct in his contention
>> that the prosecutor misstated the law of sentencing by stating
>> that a death recommendation was required if the aggravators
>> outweighed the mitigators.  However, we conclude that the
>> prosecutor's misstatement was harmless as the jury received
>> proper instruction from the trial judge.  See Cox v. State, 819
>> So. 2d 705, 718-19 (Fla. 2002), cert. denied, 537 U.S. 1120,
>> 123 S. Ct. 889, 154 L. Ed. 2d 799 (2003).

> Fennie concedes that trial counsel failed to object to all but one of the
> comments challenged here, but attempts to circumvent the lack of proper
> preservation by arguing that the inflammatory comments, taken together,
> rise to the level of fundamental error and were thus cognizable on appeal.
> See Roberts v. State, 568 So. 2d 1255, 1261 (Fla. 1990) (determining that
> appellate counsel cannot be deemed ineffective for failing to raise claims
> that are not preserved for appeal by a contemporaneous objection at trial
> except where the claims rise to the level of fundamental error).  To
> constitute fundamental error, "improper comments made in the closing
> arguments of a penalty phase must be so prejudicial as to taint the jury's
> recommended sentence."  Thomas v. State, 748 So. 2d 970, 985 n.10 (Fla.
> 1999).  Fennie contends that this standard is satisfied in the instant case
> where the State argued an uncharged rape allegation as nonstatutory
> aggravation.  Fennie further alleges that the State inappropriately
> characterized the victim as pleading for her life and the opportunity to see
> her children, and incited the jury to "send a message" to, or "do their duty"
> for, the community by sentencing Fennie to death.  We conclude that

Fennie cannot demonstrate that the unanimous death recommendation was improperly tainted by the allegedly improper comments.

With regard to the allegations leveled by the State that Fennie raped the victim prior to her death, Fennie has not and cannot show that the State argued an uncharged rape as a nonstatutory aggravator, or that the jury considered it as such.  The State formed a basis for reference to a sexual encounter through the testimony of two witnesses and narrowly focused its inquiries regarding the allegation to test the veracity of Fennie's contention that he had consensual sexual relations with the victim prior to her death.  During the penalty phase, the State referenced the sexual conduct in closing arguments as part of the larger factual context of the criminal episode, and as factual predicate for the aggravating factors of commission of a crime to avoid arrest, HAC, and CCP.  Given the factual predicate established for the statements and the relevance of the conduct to the statutory aggravators, Fennie cannot sustain the argument that a rape allegation was advanced as nonstatutory aggravation. [FN15]  Moreover, Fennie cannot demonstrate prejudice stemming from the jury's consideration of the sexual contact in the context of the statutory aggravators as the State introduced ample evidence in support of the aggravators found by the trial judge.

> FN15. Compare Porter v. Crosby, 840 So. 2d 981, 986 (Fla. 2003) (no improper consideration of nonstatutory aggravators where alleged aggravators constituted the facts of the case and were considered within the context of HAC) with Perry v. State, 801 So. 2d 78, 90 (Fla. 2001) (improper to introduce testimony of appellant's violence against wife during the penalty stage where such acts were not related to any aggravating circumstances).

In a similar manner, we resolve that Fennie has failed to demonstrate that the prosecutor's purportedly improper Golden Rule arguments tainted the jury's sentencing recommendation.  The remarks that Fennie claims inappropriately characterized the victim as pleading for her life are not of the same nature or egregiousness as those previously deemed improper by this Court.  Pertinent to our analysis is the fact that the prosecutor's comments regarding the victim's statements at the time of her death were based on Michael Frazier's testimony regarding what he had actually witnessed and heard, as opposed to the prosecutor's speculation or conjecture.  Cf. Urbin v. State, 714 So. 2d 411, 421 (Fla. 1998) (determining that the prosecutor had engaged in a "subtle 'golden rule' argument" by creating an imaginary script demonstrating that the victim was shot while pleading for his life).  We also recognize that in delivering his closing argument, the prosecution did not invite the jury to imagine

themselves in the place of the victim, as this Court has previously deemed improper.  See Garron v. State, 528 So. 2d 353, 358-59 (Fla. 1988); Bertolotti v. State, 476 So. 2d 130, 133 n.3 (Fla. 1985).  The comments concerning the evidence were not hypothetical nor were they improper.

Similarly, we determine that Fennie has failed to establish that the prosecutor's comments run afoul of caselaw precluding the State from encouraging jurors to "do their duty" for the community or "send a message" through their sentencing decision.  We have rejected arguments pertaining to comments similar to those which Fennie characterizes as objectionable.  See Cox v. State, 819 So. 2d 705, 718 (Fla. 2002) (determining that prosecutor's grandiose statement that he represented the law-abiding people of the community and state was not improper).  Importantly, there is no evidence that the prosecutor expressly exhorted the jury to return a verdict of death, or equated the juror's duty with a particular sentence.  Cf. Urbin, 714 So. 2d at 421 (deeming improper argument that "you may be tempted to take the easy way out, to not weigh the aggravating circumstances and the mitigating circumstances and not want to fully carry out your responsibility and just vote for life"); Garron, 528 So. 2d at 359 (determining that it was improper for the prosecutor to admonish the jury that it was their "sworn duty as you came in and became jurors to come back with a determination that the defendant should die for his actions").  The prosecutor's comments in the instant case are distinguishable from those that this Court has deemed improper, and in context do not rise to the level of fundamental error.

Fennie II correctly applied a Strickland analysis to the claim of ineffective assistance of appellate counsel.  Fennie II determined that Fennie failed to show appellate counsel's ineffectiveness because the comments were not fundamental error, instead the comments were either harmless or not objectionable.  Fennie cites no Supreme Court authority showing that Fennie II is either unreasonable or contrary to controlling precedent.  Fennie II is consistent with federal law, specifically Grossman v. McDonough, 466 F.3d 1325, 1348 (11th Cir. 2006), cert. denied, 550 U.S. 958 (2007), in which the prosecutor's comments are very similar.

[G]rossman argues that counsel was ineffective for failing to object to the prosecution's improper use of a "Golden Rule" argument.  "A 'golden rule'

- 53 -

argument asks the jurors to place themselves in the victim's position, asks the jurors to imagine the victim's pain and terror or imagine how they would feel if the victim were a relative."  Hutchinson v. State, 882 So. 2d 943, 954 (Fla. 2004).  Grossman complains because the prosecutor, in closing argument, told the jury there was "terror and pain" in the victim's voice when she made a transmission on her police radio, that Officer Park suffered fear and pain before she died, and that the blows to her head with the flashlight were "terrorizing," and because the prosecutor described the struggle that occurred before Officer Park died.  The district court determined that these comments were not improper "Golden Rule" arguments because they were not designed to elicit sympathy for the victim, but rather were presented to the jury as relevant arguments in support of the "heinous, atrocious, or cruel" aggravating factor.  We agree.

In Kennedy v. Dugger, the prosecutor offered the following argument to the jury:  "Can you imagine, in your own living room not bothering a soul on a Saturday afternoon?  He stopped up at his relative's house and had a beer and he walked back down to your own house, and, a total stranger, because you got in his way, destroys you."  933 F.2d 905, 913 (11th Cir. 1991).  We found that was not an improper "Golden Rule" argument because it was relevant to the defendant's future dangerousness.  Id.  This case is even clearer, where the prosecutor was permitted to comment on those aspects of the crime that made this particular murder arguably heinous, atrocious, or cruel.  Indeed, the prosecutor here never asked the jurors to place themselves in the victim's position; he simply described the circumstances of her death, which undeniably involved physical pain and enormous emotional terror, circumstances that are plainly relevant to whether the murder was heinous, atrocious, or cruel.  There was no "Golden Rule" violation, and Grossman's counsel did not provide deficient representation by failing to object. [FN17]

> FN17.  Moreover, we agree with the district court that even if there was error, there was no showing of prejudice.  The comments were not a focal point of the closing argument, and, in light of the significant number of aggravating circumstances, there is no reasonable probability that the outcome would have been different if the prosecutor had not made them.  See Bertolotti v. State, 476 So. 2d 130, 133 (Fla. 1985) (noting that because the jury's recommendation is only advisory, prosecutorial misconduct must be egregious before a new penalty phase is appropriate, and finding that an improper Golden Rule argument did not warrant re-sentencing).

The principal comments that Fennie finds objectionable occurred, as in

Grossman, during the prosecutor's discussion of the HAC aggravator (Respondent's

Exhibit A-15 at 2115-18).  Fennie II is neither "contrary to" nor an "unreasonable

application of" controlling precedent.

### Ground XII

> The trial court's sentencing order does not reflect an
> independent weighing or reasoned judgment, contrary to the
> Eighth and Fourteenth Amendments.  Appellate counsel was
> ineffective for failing to raise this issue on direct appeal.
>      A.  In preparing his Sentencing Order, the trial court
> adopted the State's Memorandum of Law, with no notice to Mr.
> Fennie's trial counsel, and trial counsel had no opportunity to
> rebut.
>      B.  The trial court failed to weigh the aggravating and
> mitigating factors in his Sentencing Order as required by law.
>      C.  The trial court improperly relied upon non-record and
> irrelevant information to rebut the mitigating circumstances and
> in support of nonstatutory aggravation in sentencing Mr. Fennie
> to death.

This ground is limited to the claim of ineffective assistance of appellate counsel.[27]

To summarize, Fennie complains that the trial judge's sentencing order is a copy of the

prosecution's sentencing memorandum, the sentencing order fails to specifically weigh

the individual aggravating and mitigating circumstances, and the sentencing order

references both Fennie's testimony from a suppression hearing—which, of course, was

not heard by the jury because Fennie did not testify—and the uncharged rape.

Fennie II, 855 So. 2d at 606-09 (some footnotes omitted), rejected this claim:

> In the first of two claims we address from Fennie's habeas corpus petition, it
> is contended that the trial court violated his constitutional rights by failing to
> independently weigh aggravating and mitigating circumstances.  Fennie

---

[27]  The earlier order (Doc. 18) dismissed the underlying substantive claim as procedurally barred.

further alleges that appellate counsel was ineffective for failing to assert this issue on direct appeal.  In support of his contention, Fennie directs attention to several purported violations of the requirement that aggravating and mitigating circumstances be independently evaluated and weighed.  We address only the issue pertaining to the trial judge's failure to assign individual weights to each of the ten nonstatutory mitigators which were determined to be established, and deny the remainder of the claim as meritless.  [FN11]

> FN11. We determine that the record refutes Fennie's allegation that the trial court (1) inappropriately copied verbatim the State's sentencing order, (2) failed to weigh the aggravators against the mitigators, (3) relied on nonrecord evidence in issuing the sentencing order, and (4) considered an uncharged rape as nonstatutory aggravation.

In Campbell v. State, 571 So. 2d 415 (Fla. 1990), this Court set forth guidelines for circuit courts to follow in weighing aggravating and mitigating factors.  In the words of the Campbell Court:

> When addressing mitigating circumstances, the sentencing court must expressly evaluate in its written order each mitigating circumstance proposed by the defendant to determine whether it is supported by the evidence and whether, in the case of nonstatutory factors, it is truly of a mitigating nature . . . .  The court next must weigh the aggravating circumstances against the mitigating and, in order to facilitate appellate review, must expressly consider in its written order each established mitigating circumstance.

Campbell, 571 So. 2d at 419-20 (footnote omitted).  Arguably, the assignment of individualized weights to aggravating and mitigating factors is not expressly and absolutely required by Campbell.  Subsequent decisions from this Court have, however, interpreted Campbell as requiring individualized weighing of aggravating and mitigating factors.  See Hurst v. State, 819 So. 2d 689, 697 (Fla. 2002) (citing Campbell for the proposition that written sentencing orders must "carefully evaluate each mitigating circumstance offered by the defendant, decide if it has been established, and assign it a proper weight");  Woodel v. State, 804 So. 2d 316, 327 (Fla. 2001) (deeming a sentencing order insufficient due, in part, to the trial court's failure to assign individualized weights to aggravators and mitigators).

Although we believe the state of Florida law on this point to be clear, we again reiterate that Campbell, as subsequently interpreted by this Court,

requires a trial judge to assign a weight to each aggravating factor and also to each mitigating factor that he or she deems has been established.  This requirement is in addition to the other procedural dictates articulated in Campbell.  Thus, pursuant to Campbell, a trial judge presiding over a capital case must:  (1) expressly evaluate in his or her written order each mitigating circumstance proposed by the defendant to determine whether it is supported by the evidence and whether, in the case of nonstatutory factors, it is truly of a mitigating nature;  (2) assign a weight to each aggravating factor and mitigating factor properly established;  (3) weigh the established aggravating circumstances against the established mitigating circumstances; and (4) provide a detailed explanation of the result of the weighing process.

The requirement to assign a weight to each aggravator and mitigator found both stems from, and advances, the constitutional requirement for individualized sentencing that compelled this Court to provide the Campbell guidelines in the first instance.  See Campbell, 571 So. 2d at 420 ("Hopefully, use of these guidelines will promote the uniform application of mitigating circumstances in reaching the individualized decision required by law.").  The process, as clarified herein, will engender an analytical discipline at the trial court level that will, in turn, enhance the trial court's consideration of the unique circumstances surrounding each capital case and each individual defendant.  This process will also facilitate a meaningful review of capital cases by ensuring that sentencing orders accurately and fully reflect the trial court's sentencing determination.  See Jackson v. State, 704 So. 2d 500, 507 (Fla. 1997).  The importance of a complete understanding of the trial court's reasoning and determination cannot be understated, as it is the responsibility of this Court to conduct a proportionality review of each capital case for the purpose of fostering uniformity in our death penalty jurisprudence.  See Tillman v. State, 591 So. 2d 167, 169 (Fla. 1991).

The sentencing order in the instant case failed to assign weights to the aggravating and mitigating circumstances on an individualized basis, and thus did not strictly conform with the requirements of Campbell as subsequently interpreted by this Court.  However, we determine that the nonconformity in the instant case does not constitute fundamental error because the sentencing order was otherwise thorough and detailed, addressed all of the matters claimed in mitigation and aggravation, and contained a proper weighing analysis even though individual weights were not assigned. [FN13]  See Griffin v. State, 820 So. 2d 906, 914 n.10 (Fla. 2002).  This Court was able to conduct a meaningful review of Fennie's case on direct appeal, reaching the ultimate conclusion that "[t]he totality of the aggravating factors and lack of significant mitigating circumstances conclusively demonstrate that death is the appropriate penalty in this case."

- 57 -

*Fennie*, 648 So. 2d at 99.  On this basis, we conclude that Fennie was not prejudiced by appellate counsel's failure to raise the insufficiency of the sentencing order on appeal.

> FN13.  Given that the sentencing order in the instant case was issued two years after our decision in <u>Campbell</u>, it could be argued that the trial judge substantially complied with then-current procedural constructs.  However, a determination in this regard is unnecessary as we conclude that the deficiency in the sentencing order does not constitute fundamental error.

Fennie complains that the final sentencing order fails to comply with subsequent interpretations of <u>Campbell</u>'s requirements for individually addressing aggravating and mitigating circumstances.  But today's requirements, as the above footnote in <u>Fennie II</u> states, were not so clearly understood when the final sentencing order was written in 1992.  Ineffective assistance of counsel is not proven by showing that counsel failed to anticipate changes in the law.  "In this circuit, we have a wall of binding precedent that shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel."  <u>United States v. Ardley</u>, 273 F.3d 991, 993 (11th Cir. 2001), <u>cert.</u> <u>denied</u>, 535 U.S. 979 (2002).

The final sentencing order supports <u>Fennie II</u>'s determination that the sentencing judge conducted the required weighing of aggravating and mitigating circumstances.  The final sentencing order (Respondent's Exhibit A-3 at 463) concludes with the following:

> Based upon the evidence presented and records of both the trial and sentencing proceedings in this cause, and upon the Court having considered this evidence, the argument of counsel, the unanimous recommendation of the jury that the Defendant be sentenced to death, and having carefully considered and weighed the aggravating and mitigating circumstances, the Court finds that sufficient aggravating circumstances, as

> set forth above, exist and that the aggravating circumstances far outweigh
> the mitigating circumstances.  Accordingly, it is the judgment of this Court
> that the only appropriate sentence to be imposed upon the Defendant,
> pursuant to Count I of the Indictment, is death.

A similar statement was accepted as proof that the trial court conducted the required

weighing.  "The trial court's sentencing order concluded, '[i]t is the finding of this Court

after weighing the aggravating and mitigating circumstances that there are sufficient

aggravating circumstances as specified in 921.141 and insufficient mitigating

circumstances therein that a sentence of death is justified.'"  Mills v. Singletary, 161 F.3d

1273, 1283-84 (11th Cir. 1998), cert. denied, 528 U.S. 1082 (2000).

Whether the final sentencing order complies in every particular with the

prescription of Campbell, as subsequently interpreted, is not pertinent on habeas

review.  "Before a federal court may overturn a conviction resulting from a state trial

. . . , it must be established not merely that the [alleged error] is undesirable, erroneous,

or even 'universally condemned,' but that it violated some right which was guaranteed to

the defendant by the Fourteenth Amendment."  Cupp v. Naughten, 414 U.S. 141, 146

(1973).  Federal review of a state judgment is limited to an alleged constitutional

violation because a federal court lacks supervisory authority over a state court.  "This

Court has no supervisory jurisdiction over state courts, and, in reviewing a state-court

judgment, we are confined to evaluating it in relation to the Federal Constitution."

Chandler v. Florida, 449 U.S. 560, 570 (1981).

Fennie cites no Supreme Court decision that precludes a sentencing judge's

relying on a sentencing memorandum submitted by either the state or the defendant

while preparing the final sentencing order.  Fennie cites no Supreme Court decision that

holds that a final sentencing order must include a written individual weighing of each aggravating and mitigation circumstance.  Fennie cites no Supreme Court decision that precludes a sentencing judge from relying on evidence that shows the defendant likely committed an uncharged felony if the evidence is admissible under state law.  In other words, Fennie fails to show that the state court decision is "contrary to" or an "unreasonable application of" controlling Supreme Court precedent.

## CONCLUSION

Although Fennie's post-conviction counsel vigorously attacks trial counsel's decision to advise against Fennie's testifying at either his guilt or penalty phase, post-conviction counsel similarly chose to withhold Fennie as a witness at the post-judgment evidentiary hearing.  As a consequence, all of the credible evidence supports the state court's finding that Fennie, not Frazier, murdered the wife and mother of two teenagers after tying her hands, forcing her into the trunk of her car, driving for several hours with his confined captive, discussing with Frazier how to kill her, and, finally, refusing her plea to see her children.  Fennie was arrested while both enjoying a ride in the victim's Cadillac and possessing the murder weapon.  His statements to the police admit his participating in the kidnapping and the robbery.

Fennie fails to show that the state court decisions are "contrary to" or an "unreasonable application of" controlling Supreme Court precedent, or an unreasonable determination of the facts, the showing required by 28 U.S.C. § 2254(d).  To the contrary, both Fennie I and Fennie II are reasonable applications of controlling precedent.  Fennie proves no violation of a constitutional right.

Accordingly, the petition for the writ of habeas corpus pursuant to 28 U.S.C.

§ 2254 (Doc. 8) is **DENIED**.  The clerk shall enter a judgment against Fennie and close

this case.

ORDERED in Tampa, Florida, on January 4, 2011.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE